**In re Pedro ARZOLA & Carmen N. Rivera Santos D/B/A El Botellon Liquor Store, Debtors.**

**Bankruptcy No. B–80–00491 (B).**

United States Bankruptcy Court, D. Puerto Rico.

April 29, 1981.

Juan Castañer Vélez, Hato Rey, P.R., for landlord.

José Raúl Cancio Bigas, San Juan, P.R., for trustee.

## OPINION AND ORDER

W. H. BECKERLEG, Bankruptcy Judge.

Carlos Ortíz Meléndez, as owner and landlord of the premises utilized by debtors for their business, moved for compensation for damages caused to the premises and for the turn-over of items removed.

Initially the matter was set for hearing on March 26, 1981, on which date the court appointed the Clerk of this Court, attorney Enrique Lamoutte, to inspect the premises and report on the alleged damages; such inspection was made in the presence of the trustee and landlord and was filed with the court on April 13, 1981. On April 14, 1981, an evidentiary hearing was held at which both parties were present and represented and at which testimony and documentary evidence were received; based on same, and on the report of the Clerk of this Court, we make the following as our findings of fact and conclusions:—

These proceedings began under Chapter 13 of the Bankruptcy Reform Act of 1978 on Sept. 8, 1980; at that time debtors operated a liquor store known as "El Botellón" located in Bayamón, P. R., in premises leased by debtors from Carlos Ortíz Meléndez, the landlord. On Sept. 25, 1980, this

case was converted to a Chapter 7 and Tomás H. Padilla was appointed trustee on Oct. 28, 1980. The trustee inventoried and had the estate appraised; on Nov. 24, 1980, landlord moved for an order for the trustee to turn over the premises, pay the back rent, and to prohibit the trustee for offering for sale any leasehold rights. A sale of the inventory was held on Nov. 26, 1980 and the highest offer of $26,000 made by Heroe, Inc., was confirmed Dec. 3, 1980; on the same day, the landlord's motion in opposition to the sale was considered and deemed premature as the trustee had not assumed the lease, and because the trustee had represented he would turn over the premises as soon as he had completed the liquidation of the remaining assets of the estate.

On January 27, 1981, the trustee held a public sale of an auto and of the debtors' equipment inventory and this sale was confirmed February 4, 1981. After delivery of the equipment to the purchaser, the trustee deposited the keys to the premises with the Clerk of the Court, notifying the landlord. The landlord picked up the keys on March 31, 1981, following the inspection, on the same day by the Clerk of this Court of the premises.

There is no substantial disagreement between the parties as to the foregoing facts; the landlord, however, did not pick up the keys when deposited because he believed the premises had been damaged and wanted same to be inspected before he received possession of same. There is no question that the premises had received damage; both parties accept the report of the Clerk of the Court which sets forth the condition of the premises on March 31, 1981; the dispute here involves who is responsible for those damages and the amount of same.

The evidence offered, and which we accept as a fact, is that to repair the premises so that they will be in the same condition as when received by the debtors will require repairs to the ceiling and ceiling panels, repairs to the floors and walls, the replacement of 3 lamps, the cleaning of the floors and the yard, the installation of a glass in the door, the replacement of the toilet and the wash basin, and the painting of the front of the premises. These repairs will cost $2,945, a price which includes materials and labor.

Under the lease contract (Ex. 1 and 2) by which debtors held the premises, the tenant is obligated to maintain the premises in the condition in which they are received and any improvement (mejora) made in the property (inmueble) will be for the landlord's benefit without cost. The uncontradicted evidence is that the premises were delivered by landlord to tenant in perfect condition and recently painted.

From the landlord's own testimony, it is clear that if some of the damage was caused by the removal of the inventory and equipment much was caused when debtor installed various equipment such as rejas, bar stools, a bar, racks, gondolas, and refrigerators. The landlord himself testified that the costs of the repairs attributable to the removal of the equipment is $900. There being no evidence to the contrary, we accept this testimony as a fact. These damages occurred while the trustee held the keys to, and thus had custody and control of, the premises. He, and thus the estate, are liable for same, and it appears proper to us that they should be allowed and paid with the status of a cost of administration. § 503(b)(1)(A), § 507(a)(1), § 726(a)(1). If appropriate, the trustee may seek to be reimbursed for the damages from the purchasers of the equipment, who on the facts presented we presume to be those who caused same.

It follows that the damages not attributable to removal is the balance, or $2,045; there is no evidence that we accept that attributes responsibility of any part of this additional damage to the trustee; rather, as we understand and appreciate the evidence, these damages were caused by, or are the result of, the debtors' activities in setting up and establishing the place of business. That they can be the basis of a proof of claim against the estate is clear under Sections 101(4), 501, and 502, but it does not follow, as we understand the landlord to contend, that this part of the claim

would enjoy a priority (or administrative) status. The claim is one covered by Sec. 502(b)(7), and such claims by virtue of Sec. 502(g) are determined and allowed "as if such claim had arisen *before* the date of the filing of the petition"—such claims are therefore what we denominate usually as "common" claims, that is, unsecured claims without the priority treatment of §§ 503 or 507.

■ The evidence establishes that the debtor installed his equipment (bar, bar stools, refrigerator, gondolas, rejas, etc.,) by drilling holes in the wall or floor and the equipment was secured to the floor by the use of anchor or expansion bolts. The use of anchor or expansion bolts, in our opinion, contemplates that the property so affixed was intended to be removable, and such items are not thereby converted into realty or immovables within the meaning of Sec. 263 of the Civil Cove, 31 LPRA 1043; *Pérez v. Matos* (1935) 48 P.R.R. 582.

Landlord's Ex. 1 is a deed dated April 30, 1976 between landlord and Julio Merle as purchaser-tenant for the sale of a going concern lease of realty, and an option for the purchase of same. The realty is the same as that used by debtor; debtor being the next tenant (See Ex. 2).

Landlord originally operated in the realty in question a liquor store; by Deed No. 27 of April 30, 1976 (Landlord's Ex. 1), landlord sold to Julio Merle Martínez all the fixtures, equipment, and inventory for $56,-099 payable $31,806.70 upon execution, $8,193.30 in 15 days, and the balance of $16,099 payable in 3 years; by the same deed Julio Merle Martínez leased the real property for 3 years at $400.00 a month and assumed the obligations of the business ($21,046.40). The equipment sold is described in the said deed as an ice machine, a display refrigerator of 10 feet, a Coca-Cola refrigerator, a refrigerator counter, 2 air conditioners, a freezer, a cash register, an adding machine, 4 displays, 2 signs, 2 cars, and 2 conveyors.

On December 20, 1976, landlord and debtor entered into a 3 year lease contract for the same realty (Landlord's Ex. 2); this lease makes reference to and incorporates the terms of Deed No. 27, and states that the landlord had by Deed No. 27 sold to Julio Merle Martínez a going concern business established in the real property in question and had leased the realty to Julio Merle Martínez; this lease contract also states that Julio Merle Martínez had sold to debtor and that debtor had assumed the balance of $16,099 owed by Julio Merle Martínez to landlord.

The Deed No. 27 and the subsequent lease to debtor confirm our conclusion that the equipment was never considered by the parties as part of the realty; we, therefore, conclude that landlord has no right to recover or be reimbursed for the items of equipment sold by the trustee.

■ There remains the question of rent. Our order entered in open court on November 26, 1980 provided that the trustee shall pay rent at the rate of $484 a month, and we see no reason to change same. The trustee's obligation to pay the rent as an administrative expense of liquidation commences with the adjudication, (which was on Sept. 25, 1980) and continues until the premises are returned to the landlord. While we appreciate landlord's concern about the damages to the premises, the deposit of the keys with this court, and the notification of such deposit to the landlord, is constructive delivery of the premises to the landlord; the trustee's rent obligation ceases as of such delivery. The trustee's obligation is to pay "actual and necessary costs and expenses of preserving the estate." Sec. 503(b)(1). These are given a first priority under Sec. 507(a)(1). The case law has restrictively interpreted the landlord's right to such rent. Thus the landlord has been limited to a reasonable *pro-rata* rent for use and occupancy of the premises for the period, irrespective of the contractual rent. *In re Universal Medical Services, Inc.,*, 357 F.Supp. 1137 (1973); *In re Frederick Meats, Inc.,* 483 F.2d 951 (CCA–9, 1973). The courts have shown a tendency in dealing with such rents to examine them closely to protect the estate from unnecessary expenses. See 3A *Collier on Bankruptcy,* 14th

Ed., Sec. 62.14(2), p. 1510. Thus where the landlord's repossession was delayed while the landlord sought to make certain claims, the landlord has been denied rent for the period of delay. *Crook v. Zorn*, 100 F.2d 792, cert. den. 307 U.S. 630, 59 S.Ct. 833, 83 L.Ed. 1513 (1939); *Armour & Co. v. Callahan*, 25 F.2d 584 (CCA–4); *Matter of Aville Realty Corp.*, 57 F.2d 882 (D.C., N.Y.).

In summary, then, the landlord's motion is denied as to his request for turn-over, and is granted as to damages in the amount of $900.00, same to be paid as an administrative expense of liquidation under Sec. 507(a)(1).

Further, the trustee is authorized to pay the landlord also as an administrative expense of liquidation pro-rata rental (figured at the rate of $484 per month) for the period between the adjudication herein and the deposit by the trustee of the keys of the premises with this court.