**In re BEVERLY HOUSE NURSING HOME, INC. d/b/a Hancock House Nursing Home, Debtor.**

**Bankruptcy No. 78–1833–L.**

United States Bankruptcy Court,
D. Massachusetts.

April 21, 1987.

Charles R. Bennett, Jr., Riemer & Braunstein, Boston, Mass., for claimant.

Vincent Pisegna, Looney & Grossman, Boston, Mass., Trustee.

## MEMORANDUM

JAMES N. GABRIEL, Chief Judge.

The issue before the Court arises out of a claim by Abraham D. Gosman ("Gosman") for use and occupancy payments for a period of time between October, 1978 and November 10, 1980 and the objection to that claim by Stewart F. Grossman, the Receiver/Trustee (the "Receiver") of Beverly House Nursing Home, Inc. ("Beverly House" or the "Debtor"). The Court conducted evidentiary hearings with respect to the Receiver's Motion for Determination of Any Amount Due and Owing Abraham D. Gosman for Use and Occupancy, which motion was filed on or about March 29, 1984, on June 16, 1986, August 24, 1986, October 2, 1986 and November 25, 1986. At the November 25, 1986 hearing, the Court requested the parties to submit memoranda on the issue of whether Gosman, in refusing to take possession of the premises, waived his right to receive use and occupancy payments.

## FACTS

Prior to the commencement of this bankruptcy proceeding on September 18, 1978, the Beverly House Nursing Home was operated by Joseph P. Hill ("Hill"). Hill owned both the real estate and substantially all of the personalty used in the operation of the nursing home. On or about May 1, 1978, while Hill was operating the home, the Department of Public Health (the "DPH") decertified the nursing home because of problems associated with patient care and the physical condition of the home. As a consequence, at the time the bankruptcy proceeding was filed, the nursing home was not permitted to admit new patients or readmit former patients.

Shortly after the bankruptcy filing, on September 26, 1978, Grossman was appointed as Operating Receiver of Beverly House, as well as three other related nursing homes. Effective September 15, 1978, he was granted a DPH certification for Level III units (intermediate care facility beds), but not for Level II units (skilled nursing facility beds). Level II certification was reinstated on January 25, 1980, limited to a nine month period, however. The recertification was effective for the period between October 1, 1979 and June 30, 1980. The nursing home eventually was recertified in October of 1980.

Shortly after the commencement of the bankruptcy proceeding, on November 15, 1978, Hill entered into an agreement with Gosman to sell the land and building from which Beverly House operated.[1] The sale was consummated in mid-March of 1979. Gosman acquired only assets from Hill, i.e., the real estate, personal property and goodwill associated with the operation. The Receiver, in his testimony, admitted that Gosman only acquired assets from Hill and not the operation of the business. The Purchase and Sale Agreement executed by Hill and Gosman in November of 1978 provided, as a condition precedent to the sale of the nursing home, that all decertification proceedings would be terminated. Moreover, the purchase price included an assumption by Gosman of the then existing first mortgage on the real property and an assignment by the mortgagee of all use and occupancy payments due from October 1978 through the date of assignment.

Following Gosman's acquisition of the real estate, the Receiver initiated efforts to get Gosman to take possession of the facility. For example, on June 29, 1979, July 5, 1979, April 10, 1980, May 9, 1980 and October 24, 1980, the Receiver filed applications to either transfer or abandon the operation of the Beverly House Nursing Home to

---

1. The Court notes that this agreement, which involved the sale of estate assets, was not approved by Judge Lawless, and that the Receiver was not a party to it. It would appear that Judge Lawless implicitly approved the agreement on October 29, 1980 when he approved the Receiver's Application to Transfer Operation and Sell Assets of Beverly House Nursing Home, Inc. to Abraham D. Gosman.

Gosman and to sell the nursing home assets he acquired to Gosman as well.[2] Despite the Receiver's efforts, Gosman did not take possession of the facility, although he filed an application for a license to operate the facility on March 25, 1980 that gave him a provisional license to conduct operations. Gosman eventually took possession on November 10, 1980, following Judge Lawless' approval, on October 29, 1980, of the Receiver's October 24, 1980 application.[3] That application contained the following provision with respect to the payment of use and occupancy:

8. The Receiver and Gosman have agreed, subject to Court approval as follows:

c. The Receiver and Gosman agree that the sum owing and payable to Gosman should be the fair rental value of the property used by the Debtor, subject to the following adjustments and no others:

i. An adjustment downward for interim payments made by the Receiver on account of use and occupancy.

ii. An adjustment downward of $___ for the purchase by Gosman of certain receivership assets and reimbursement for repairs paid for by the Receiver, as listed in Exhibit A hereto.

iii. An adjustment upward or downward, as appropriate, on account of a net closing adjustment to be computed on the closing date based upon the following items: inventory, payroll, expenses, fuel, electricity, telephone, food and supplies on hand, patient trust funds and resource monies. The Receiver shall have the responsibility of providing an accurate inventory as of the closing date.

Prior to Court approval of his October 1980 application, Gosman had asserted that he was entitled to use and occupancy payments, and he had filed several motions to compel its payment. Indeed, the Court periodically entered orders directing the Receiver to pay Gosman for use and occupancy, a fact reflected in paragraph 8(c)(i) of the application. The Receiver complied with the Court orders, but the parties understood, and, in fact, the docket clearly indicates, that they reserved their rights with respect to the amount and application of use and occupancy payments.

## DISCUSSION

The Receiver, relying on *Crook v. Zorn*, 100 F.2d 792 (5th Cir.1939); *In re Arzola*, 11 B.R. 762 (D.P.R.1981) and *Commonwealth v. Newburyport Manor Chronic Hospital, Inc.*, No. 49685, slip op. (Massachusetts Superior Court August 18, 1986) (Andrew Gill Meyer, J.), argues that, as a matter of law, an individual otherwise entitled to use and occupancy payments waives entitlement to those payments when that individual refuses an offer to surrender the premises. According to the Receiver, he tendered possession of the facility to Gosman effective April 1, 1979. Thus, in the Receiver's view, Gosman's refusal to take possession then and his subsequent refusal to take possession for a considerable period of time thereafter constituted a waiver of his right to use and occupancy. The Receiver fails to note, however, that his offers to surrender possession of the nursing home to Gosman almost invariably were coupled with the sale of receivership assets to Gosman as well.

Gosman argues that the Receiver is estopped from asserting what, in his view, amounts to an affirmative defense of waiver because the October 24, 1980 application constituted a binding agreement between the Receiver and Gosman to limit the issue in dispute to the amount of Gosman's use and occupancy claim. In other words, Gosman argues that his use and occupancy

2. Additionally, on or about January 16, 1980, the Unofficial Creditors' Committee filed an Application to Have Receiver Terminate Operations.

3. Curiously, Judge Lawless, on April 25, 1980, entered an Order authorizing the Receiver to turn over the operation of the nursing home to Gosman in response to the Receiver's April 10, 1980 application. Additionally, Judge Lawless authorized the sale of receivership assets conditioned upon their appraisal. Apparently, Judge Lawless chose not to enforce the order or its conditions were not met. Neither the docket nor the testimony adduced at trial satisfactorily explains what happened.

claim is subject only to the adjustments set forth in subparagraphs 8(c)(i)–(iii). Since the defense of waiver is not one of the enumerated adjustments, Gosman says it may not be considered by the Court.

Gosman's argument does not stop there, however. He also asserts that the Receiver failed to prove by a preponderance of the evidence that Gosman intentionally or impliedly relinquished his right to recover use and occupancy. Gosman emphasizes two points: 1) that the Receiver linked the relinquishment of possession with Gosman's purchase of personalty that the Receiver acquired while operating the home; and 2) that Gosman had no obligation, contractual or otherwise, to assume operational control over the facility. With respect to the latter observation, Gosman testified that, in effect, full recertification was a condition of the agreement and that he "had no obligation to take over operation until complete decertification had been corrected." The Court has no intention of construing the 41–page agreement between Gosman and Hill. Nevertheless, the Court notes that the November 15, 1978 agreement between Gosman and Hill, who at the time was both owner of the realty and personalty and president of the Debtor, specifically provided that "[t]he sale of the properties is contingent upon the satisfaction of the following conditions precedent, failing any one of which, this agreement shall, at the option of the buyer, be null and void and any payment and deposit made under this Agreement shall be refunded and terminated, and the parties shall be under no further obligation to each other, including any costs or expenses incurred in entering into this Agreement: ... (g) [t]he termination of all decertification proceedings by the Commonwealth of Massachusetts against each of the corporate sellers and the said Joseph F. Hill, Jr." Unlike Gosman, the Court is unable to construe this language to mean that recertification was a condition precedent to the assumption of operations of the nursing home rather than a condition precedent to the sale as the quoted language clearly indicates.

Gosman also suggests that the Receiver cannot rely on any equitable considerations to support his waiver claim. In support of that argument, Gosman notes that between October 1978 and November 10, 1979 he was required to pay all costs associated with the land, including mortgages, real estate taxes, insurance and water and sewage expenses, while the Receiver received payments from the Commonwealth of Massachusetts for rent[4] while occupying the premises substantially rent free.

■ A waiver is "the intentional relinquishment of a known right." *Niagara Fire Insurance Co. v. Lowell Trucking Corp.*, 316 Mass. 652, 657, 56 N.E.2d 28 (1944). As an affirmative defense, it must be pled and proven by the party alleging it. *Id.* The question of whether a party has or has not waived a known right would appear to be a simple one. However, resolution of the issue in the context of this case has opened the proverbial Pandora's Box. The Court has mentioned that the post-petition agreement between Hill and Gosman, an agreement which resulted in the sale of estate assets, was not approved by Judge Lawless and that the transfer of the nursing home operation to Gosman was authorized six months before a second authorization that resulted in the actual transfer of nursing home operations. These substan-

---

**4.** The terms fixed costs, use and occupancy and rent have separate and distinct meanings for the Commonwealth of Massachusetts Rate Setting Commission ("RSC"), the Bankruptcy Court and the Receiver. The RSC reimbursed the Receiver for fixed costs associated with Gosman's ownership of the realty, i.e., building depreciation, mortgage insurance, real estate taxes and the like. These costs were itemized on RSC–2 forms that were submitted by Gosman as the owner of the realty. The term use and occupancy connotes fair rental value. That term appears on the RSC–1 forms submitted by the Receiver to the RSC. The use and occupancy payments listed on the RSC–1 by the Receiver as operating expenses theoretically are substantiated by the fixed costs itemized by Gosman on the RSC–2 form. The Court used the term rent, in the context of this case, as a shorthand for use and occupancy. Additionally, through the testimony of Robert Murphy, the Court determined that reimbursement by the RSC for fixed costs equalled fair use and occupancy or rent.

tive and procedural anomolies trouble the Court and suggest that none of the parties involved in this case are in a position to claim equity is on their side. Moreover, the Court is troubled by its suspicion that even after four days of evidentiary hearings it does not have a complete picture of what was transpiring between the parties. Given the ongoing state court litigation between Gosman and Hill and the age of this case, perhaps such a situation should not come as a surprise.

Nevertheless, the Court agrees with Gosman that the evidence submitted by the Receiver does not support the defense of waiver. Even a cursory review of the docket is sufficient to establish that Gosman demanded the payment of use and occupancy within a short period of time from the date the sale of the nursing home was consummated. The question of whether Gosman should be estopped from relying on those demands in view of his agreement with Hill that was entered into without Court approval was not raised by the Receiver and will not be examined by the Court.

Additionally, the court observes that, although the termination of decertification proceedings was a condition precent to the sale, not a condition precedent to assumption of operations, the Court can understand why the nine month recertification, in view of its brief duration, was insufficient in Gosman's view to overcome his objection to taking possession absent full certification.

The Court's decision is reinforced by the fact that the cases cited by the Receiver do not unequivocally support his position. For example, the trustee/tenant in *Crook v. Zorn*, 100 F.2d 792 (5th Cir.1939), surrendered an apparently vacant building to the landlord, not an operating nursing home subject to state and federal regulations whose surrender was linked to the purchase of receivership assets.

Likewise, *Commonwealth of Massachusetts v. Newburyport Manor Chronic Hospital, Inc., supra,* is dissimilar to the instant case. In *Newburyport Manor,* two hospitals that had filed petitions under the Bankruptcy Act were ordered by the Bankruptcy Court to physically surrender their assets to the Arlington Trust Company ("Arlington"). Arlington refused to take possession, and the Department of Public Health filed an action against both hospitals and Arlington, seeking *inter alia* the appointment of a state court receiver. Although the procedural posture of the case is unclear from the Superior Court opinion, the Suffolk Superior Court subsequently appointed a receiver without objection from Arlington. The receiver operated the facilities until they were sold at a foreclosure sale. Arlington was paid its principal and a portion of accrued interest. However, it also claimed it was entitled to payments for the "use" of the hospitals pursuant to its mortgage. The court found that Arlington was not entitled to collect what it characterized as interest payments out of the collateral held for the payment of principal and interest during the receivership because Arlington waived its right to collect such interest out of that collateral by electing to share in the general funds of the insolvent. According to the court, Arlington's right to receive rents was conditioned upon its taking possession of the property. Additionally, since Arlington impliedly assented to the appointment of a receiver, the court found that its claim was subordinated to the lien of the receiver for services and expenses in saving the hospitals from destruction, waste and loss.

Since Gosman is not a mortgagee, the holding of the case is inapplicable. Moreover, Gosman did not assent to the appointment of the Receiver, since the Receiver had been operating Beverly House for five months before Gosman purchased the realty and personalty from Hill and the Debtor, and the Receiver did not sell the premises for the benefit of Gosman.

The Court's determination that Gosman did not waive his claim to use and occupancy payments does not resolve all the outstanding issues with respect to the Receiver's Motion for Determination. Nevertheless, it would appear to the Court that the amount of use and occupancy that the Receiver owes Gosman is equal to what the

Receiver received from the RSC, less appropriate adjustments such as the use and occupancy payments made by the Receiver pursuant to earlier Court orders. Indeed, the Court finds that the Receiver and Gosman are bound by paragraph 8(c) of the Receivers October 1980 application. Clearly, this application was approved by the Court and resulted in the transfer of operations of the nursing home. As a consequence, its provisions should bind the parties, particularly in view of the fact that they contain the structure of a fair and reasonable settlement of the present dispute.

In view of the foregoing, the memoranda and arguments of counsel, the Court hereby finds that Gosman did not waive the payment of use and occupancy.