# UNITED STATES BANKRUPTCY APPELLATE PANEL FOR THE FIRST CIRCUIT

---

**BAP No. PR 99-006**

---

**IN RE: ASTACIO HERNANDEZ CRUZ SELENIA,**
**Debtor.**

---

**DORAL MORTGAGE CORPORATION,**
**Appellant,**

**v.**

**ASTACIO HERNANDEZ CRUZ SELENIA,**
**Appellee.**

---

**Appeal from the United States Bankruptcy Court**
**for the District of Puerto Rico,**
**(Hon. Gerardo A. Carlo, U.S. Bankruptcy Judge)**

---

**Before**
**Votolato, Vaughn, and Deasy U.S. Bankruptcy Judges**

---

**Ronald L. Rosenbaum, Esq., for the Appellant.**

**Roberto Román Valentin, Esq., for the Appellee.**

---

**March 7, 2001**

---

**Votolato, Chief Judge.**

Before the Panel is a secured creditor's appeal from an order entered by the United States Bankruptcy Court for the District of Puerto Rico on November 5, 1998 (the "Order"), directing Doral Mortgage Corporation ("Doral"), as servicer for Federal Home Loan Mortgage Corporation, to refund certain mortgage payments to the Debtor. For the reasons discussed herein, we conclude that the bankruptcy court order deprived Doral of basic due process. Accordingly, we vacate the Order and remand to the bankruptcy court for consideration consistent with this opinion.

### BACKGROUND

On October 7, 1996, Cruz Selenia Astacio Hernandez ("Hernandez") filed a petition for relief under Chapter 13 of the United States Bankruptcy Code. As an asset of the bankruptcy estate, Hernandez included property known as Parcel Number 4 located on Street #4 Urb. Roseville, Parcelas Canejas, Caimito in Tortugo Ward of Rio Piedras, Puerto Rico (the "Property").

Doral filed an objection to confirmation of the plan, alleging that the Property had been sold at a judicial sale prior to the Chapter 13 filing, and therefore was not property of the bankruptcy estate. In support, Doral produced copies of the Notice of Sale dated February 12, 1996, and a Special Masters Return, dated March 29, 1996. See App. to Appellant's Brief, at 22-28.

Although Hernandez continued to occupy the Property after the judicial sale, she stopped making mortgage payments to Doral in December 1998. See Appellant's Brief, at 2. The post-judicial sale mortgage payments collected from Hernandez total $25,615.[1] The bankruptcy court was satisfied with the evidence presented by Doral, and in the Order, stated:

> The real property which the debtor included within her schedules of assets was sold at public auction on March 29, 1996.... At the judicially ordered public sale, title was adjudicated to Federal Home Loan Mortgage Corporation. Because the debtor's ownership rights were extinguished and the debtor divested of legal title to the Rio Piedras property, prior to the filing of the petition in bankruptcy, ... the property is not property of the debtors estate.... The debtor is granted thirty (30) days to file amended schedules and ... *Doral is granted thirty (30) days to refund all payments made by the debtor after the date of the public auction sale.*[2]

See Order at 5 (*emphasis added*).

Pursuant to Fed. R. Bankr. P. 8001, Doral had until November 15, 1998 to file a timely notice of appeal. Due to problems with service of the order, Doral filed a motion with the bankruptcy court requesting a ten (10) day extension of time within which to file its notice of appeal. The motion was granted based on excusable neglect, and an appeal was timely filed by Doral on

---

[1] Although the order indicates that Hernandez made only $13,000 in mortgage payments during this period, Doral advises that the post foreclosure sale payments made by Hernandez total $25,615. See Appellant's Brief, at 1.

[2] The part of the order directing Doral to refund all post-auction payments came as a surprise to Doral, as that issue was not presented to the court, nor was it argued by either side.

November 25, 1998. As all this was happening, however, Hernandez failed to file amended schedules as ordered, and on May 18, 1999, the case was automatically dismissed by rule of court, creating the jurisdictional issues discussed immediately below, and putting Doral in the untenable position of having its appellate right jeopardized, *because of the Debtor's failure to obey a court order*.

### JURISDICTION

Pursuant to 28 U.S.C. §§ 158(a) and (b), the Panel may hear appeals from final judgments, orders, and decrees, and, in appropriate circumstances, the Panel has discretion to hear appeals from interlocutory orders. *See also* 1st Cir. BAP R. 8003-1. A final decision or order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945); *see also Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 646-647 (B.A.P. 1st Cir. 1998) (discussing final orders in bankruptcy matters). In the context of the present dispute, the bankruptcy court's November 5, 1998 Order directing Doral to refund all post-judicial sale mortgage payments to Hernandez is a final order.

Moreover, notwithstanding the dismissal of the underlying bankruptcy case, we rule that jurisdiction of this appeal properly

4

lies with the Panel.[3]  There is a substantial body of Federal Circuit case law holding that, notwithstanding the dismissal of the underlying bankruptcy case, retention of jurisdiction is consistent with the policies of judicial economy.  *See In re Morris*, 950 F.2d 1531 (11th Cir. 1992) (holding that dismissal of the underlying bankruptcy case does not automatically strip the federal court of jurisdiction ... it is left to the sound discretion of the federal court and that jurisdiction should be retained where cause is shown); *see also Pauley v. Bank One Colorado Corp. (In re Pauley)*, 205 B.R. 272 (D. Colo. 1997) (jurisdiction was retained over an adversary proceeding notwithstanding the dismissal of the underlying Chapter 13 case, where the cause of action did not depend on the status of the bankruptcy case and retention of jurisdiction served the interest of fairness and judicial economy); *see also In re Querner*, 7 F.3d 1199 (5th Cir. 1993) (matter rests within the discretion of the court based on the issues of economy, convenience, fairness and comity); *see also In re Porges*, 44 F.3d 159 (2d Cir. 1995) (retention of an adversary proceeding after dismissal of bankruptcy case is in the discretion of the Court, where the matter has been substantially litigated).

---

[3]  In light of the May 18, 1999 dismissal, the Panel issued an order directing Doral to show cause why the appeal should not be dismissed for lack of jurisdiction.  Doral complied, and based upon its response the Panel withdrew the Order to Show Cause, and oral arguments were heard on May 4, 2000.

This case was filed in October 1996, meetings pursuant to 11 U.S.C. § 341 were conducted in December 1996 and June 1997, Doral filed its first opposition to plan confirmation in December 1996, and Hernandez filed a response in January 1997. Additionally, the Order from which Doral appeals was entered in November 1998, after a series of hearings before the bankruptcy court. By any standard, this matter has been substantially litigated, and retention of jurisdiction, despite dismissal of the underlying case, best serves the interests of judicial economy, convenience and fairness to all parties.

We also questioned the appropriateness of Doral's raising the use and occupancy issue for the first time on appeal. As the First Circuit Court of Appeals has often pointed out, "[u]nder well settled principles, we need not-indeed, should not-consider matters which were not raised below." *Puleio v. Vose*, 830 F.2d 1197, 1202 (1st Cir. 1987), *cert. denied*, 485 U.S. 990 (1988) (citing *United States v. Figueroa*, 818 F.2d 1020, 1025 (1st Cir. 1987)). Here, however, the facts and countervailing principles exist, whereby Doral was effectively deprived of due process. The litigation between the parties involved ownership – the only issue presented to the bankruptcy court, in the context of an objection to confirmation, where the Debtor alleged that the Property was property of the estate. In its objection to confirmation Doral argued that because the property was sold at judicial sale prior to

6

the Chapter 13 filing, the home was not property of the estate as of the filing date, and the bankruptcy court agreed. See App. to Appellant's Brief, at 15. Clearly, ownership was the *only* issue litigated before the bankruptcy court. Since neither party ever raised the issue of the Debtor's liability for use and occupancy, and because the parties were not advised prior to entry of his decision that the bankruptcy judge intended to order disgorgement of mortgage payments,[4] the November 5, 1998 Order exceeded the scope of the dispute, to the prejudice of Doral. In these circumstances, and due to no neglect on its part, Doral's only course is to raise the use and occupancy issue for the first time before this Panel.

## STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed under the "clearly erroneous" standard, while its conclusions of law are reviewed de novo. *See Brandt v. REPCO Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.)*, 132 F.3d 104, 107-108 (1st Cir. 1997); *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir. 1994); *In re SPM Mfg. Corp.*, 984 F.2d 1305, 1310-11 (1st Cir. 1993). Here, the bankruptcy court's determination that the home is not

---

[4] Based on the record before us, it does not appear that Doral had any notice that the bankruptcy court was contemplating an order that would require Doral to disgorge post-judicial sale payments to Hernandez, or that there would not be an offset to the mortgage payments, to the extent of the value of this Debtor's use and occupancy of the premises.

property of the bankruptcy estate is a question of law and should be reviewed de novo, while its application of the law to the facts is reviewed under the abuse of discretion standard. *In re Fracasso*, 222 B.R. 400 (B.A.P. 1st Cir. 1998), *aff'd*, 187 F.3d 621 (1st Cir. 1999).

Regarding abuse of discretion, the First Circuit has stated: "Judicial discretion is necessarily broad–but it is not absolute. Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." *Independent Oil & Chemical Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.*, 864 F.2d 927, 929 (1st Cir. 1988).

## DISCUSSION

The issue raised by Doral on appeal is whether, and if so, in what amount, Hernandez was obligated to pay Doral for use and occupancy of the Property from the date of the judicial sale until the premises were vacated. Acknowledging the correctness of that part of its order, Doral has not appealed the bankruptcy court's direction that it refund to the Debtor mortgage payments made subsequent to the foreclosure sale.

Pursuant to Code Section 105(a), a bankruptcy judge has broad power to enter any order that is necessary or appropriate to carry out the provisions of the bankruptcy code. This broad power

8

however must, of course, be exercised within boundaries which respect the due process rights of the parties, and this principle applies whether the questioned order was entered by design or inadvertently.

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is *notice*...to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections (and positions)." *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 314 (1950) (*emphasis added*). Here, Doral had no notice that the bankruptcy judge was contemplating ordering disgorgement, nor does the record indicate that the bankruptcy judge gave Doral an opportunity to present its objection to such an order, or to argue set-off based on the Debtor's use and occupancy of the premises. In ordering Doral to refund all payments made by the Debtor after the date of the public auction sale, the bankruptcy court "by-passed Code provisions and related procedural rules designed to govern attempts to recover from third-parties." See *Roffman v. Butler (In re ROPT Ltd. P'ship.)*, 209 B.R. 144, 151 (B.A.P. 1st Cir. 1997). In *ROPT* we noted that the procedural rules designed to recover assets of the estate are outlined in Code Section 542 (turnover of estate property); Section 543 (turnover of property by custodian); Section 544 (trustee avoiding powers); Section 547(b) (preference

9

avoidance); Section 548 (fraudulent transfer); and Section 549 (postpetition transfer avoidance). Id.

The Panel in *ROPT* also held that a bankruptcy court's broad power to enter necessary or appropriate orders under Section 105 of the Code "does not trump due process's essential requirements of fair notice and opportunity to be heard." Id. at 152 (quoting *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997)("Due process requires that courts provide notice and opportunity to be heard before imposing any kind of sanction")).

The facts in *ROPT* are similar to those presently before us. In *ROPT,* the bankruptcy judge entered an order directing a party to refund a large sum of money to the Debtor; however, the notion of such a judgment being entered against that party was completely absent from the context in which the proceeding arose. In holding that the order denied the party his day in court, the order was vacated.

Here, the bankruptcy judge stated that the Debtor had "made more than $13,000 in payments since the foreclosure sale" based upon a loan history attached to a pleading or document filed with the bankruptcy court. *Order* at 2. In its brief, Doral candidly admits, however, that the mortgage payments made by the Debtor after the date of the foreclosure sale were actually $25,614.82. *Appellant's Brief* at 1. But there is no evidence or argument as to the amount of mortgage payments or the duration of the Debtor's

10

occupancy of the property after the foreclosure sale. In the absence of such evidence, there is no way to know whether the bankruptcy judge considered the liability of the Debtor for use and occupancy or the amount of mortgage payments received by Doral. However, it is clear that Doral may have an administrative claim against the Debtor for her use and occupancy of the mortgaged property after the filing of the bankruptcy petition, as well as a pre-petition claim for use and occupancy.

The Panel notes that in the Order, the bankruptcy court held that the title to the Debtor's real property passed to Doral's principal, the Federal Home Loan Mortgage Corporation, on March 29, 1996, the date of the foreclosure sale, or slightly more than six months before the Debtor filed her petition. Accordingly, the Debtor's liability, if any, for use and occupancy may have both pre-petition and post-petition components and may require the application of both the laws of Puerto Rico and the provisions of Section 503(b)(1)(A) of the Bankruptcy Code. *See Zagata Fabricators, Inc. v. Superior Air Prods.*, 893 F.2d 624, 629 (3d Cir. 1990); *In re Boricua Motors Corp.*, 77 B.R. 358, 364 (Bankr. D.P.R. 1987); *In re Arzola*, 11 B.R. 762, 765 (Bankr. D.P.R. 1981).

For the reasons set forth above and in *Ropt*, the bankruptcy judge's order directing Doral to refund all mortgage payments made by the Debtor after the date of the foreclosure sale, without notice to Doral that he intended to consider that issue, and

11

without giving Doral an opportunity to be heard on the issue, amounted to a denial of due process. Doral was entitled to, but did not receive its day in court on the related issues of refunding mortgage payments and offset for the Debtor's use and occupancy.

Accordingly, the provisions of the November 5, 1998 Order directing Doral to refund mortgage payments to the Debtor are VACATED, and this matter is remanded to the bankruptcy court for consideration consistent with this opinion.