**Kevin F. MARCHAND,**
**Plaintiff–Appellee,**

v.

**MERCY MEDICAL CENTER, an Idaho corporation; et al., Defendant,**

**and**

**Neil K. Farris, D.O., Defendant– Appellant.**

**No. 92–36733.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 2, 1994.

Decided April 25, 1994.

---

Bruce R. McAllister, Quane, Smith, Howard & Hull, Boise, ID, for defendant-appellant.

J. Charles Hepworth, Hepworth, Nungester & Lezamiz, Boise, ID, for plaintiff-appellee.

Before: WRIGHT, REAVLEY *, and LEAVY, Circuit Judges.

Opinion by Judge EUGENE A. WRIGHT.

EUGENE A. WRIGHT, Circuit Judge.

A jury awarded Kevin Marchand $4.2 million in a medical malpractice action. He then petitioned to recover attorneys' fees and costs under Fed.R.Civ.P. 37(c), because three defendants failed to admit key requests for admission that he proved at trial. The district court ordered Dr. Neil Farris to pay Marchand's reasonable expenses. Farris appeals this award and we affirm.

## BACKGROUND

Kevin Marchand was seriously injured in an industrial accident. To prevent movement of his neck, paramedics placed him on a back board with a cervical neck collar, sandbags on both sides of his head, and tape stretched across his forehead between the sandbags. The immobilization devices were used to prevent movement of his neck. An ambulance rushed him to Mercy Medical Center. Several physicians treated him in the emergency room, the radiology department, and the intensive care unit (ICU).

Farris provided care to Marchand in the emergency room and radiology department. He and the other doctors agreed to order a full set of cervical spine x-rays. While in the radiology department Farris removed Marchand's cervical collar. He said this was necessary because Marchand was experiencing respiratory distress and Farris needed to examine his patient's jugular vein. No other person at Mercy Medical Center, nor any medical report from the hospital confirmed the occurrence of a serious respiratory problem in radiology.

---

* Honorable Thomas M. Reavley, Senior United States Circuit Judge, Fifth Circuit, sitting by designation.

Farris did not complete the full set of x-rays he and the other doctors originally contemplated. Five x-rays were taken of Marchand's chest and neck. Farris delivered Marchand to the ICU because of his respiratory distress, and testified that the sandbags were in place, but probably not the collar. But it is undisputed that both were absent shortly after admission. Then he claims to have consulted with a radiologist, Dr. Walker, who confirmed Farris's view that the cervical spine was within normal limits. Walker did not recall consulting with Farris.

Marchand arrived in ICU about 5:30 p.m. Dr. Blome became his primary care provider, and radiologist Truksa reviewed the x-rays and issued a written report. About 1:50 p.m. the next afternoon, Marchand became paralyzed and is now a quadriplegic. The doctors had missed a fracture of the cervical spine. The fracture appeared on three of the chest x-rays, but was not pictured on the lateral cervical spine x-ray.

Marchand sued five doctors and the Mercy Medical Center. After a lengthy trial the jury found Farris, Blome and Truksa negligent, and apportioned each 33 percent of the fault. In a post-trial petition Marchand asked for an award of attorneys fees under Fed.R.Civ.P. 37(c). He claimed that the negligent doctors had improperly failed to admit some requests for admission that he proved at trial. The requests asked the doctors to admit negligence, to admit that Marchand's immobilization devices were removed at the hospital, and to admit causation. The court imposed fees and costs of $205,798.34 against Farris alone.

## ANALYSIS

■ We review for abuse of discretion a Rule 37(c) award of fees and costs.[1] *Comeaux v. Brown & Williamson Tobacco Co.,* 915 F.2d 1264, 1268 (9th Cir.1990). We will not reverse unless we have a definite and firm conviction that the district court committed a clear error of judgment. *United States v. Plainbull,* 957 F.2d 724, 725 (9th Cir.1992). A district court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact. *United States v. Rahm,* 993 F.2d 1405, 1410 (9th Cir.1993).

Fed.R.Civ.P. 37(c) reads:

If a party fails to admit ... the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves ... the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (1) the request was held objectionable pursuant to Rule 36(a), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (4) there was other good reason for the failure to admit.[2]

The Rule mandates an award of expenses unless an exception applies. Enforcement encourages attorneys and parties to identify undisputed issues early to avoid unnecessary costs. Failure to identify those issues wastes the resources of parties and courts.

■ The Federal Rules are intended "to secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1.[3] Parties may not view requests for admission as a mere procedural exercise requiring minimally acceptable conduct. They should focus on the goal of the Rules, full and efficient discovery, not evasion and word play. *See* William W. Schwarzer, *The Feder-*

---

1. The district court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291.

2. All citations are to the Federal Rules in effect at the time of trial. The version of Fed.R.Civ.P. 37(c) in effect prior to December 1, 1993 may now be found at Fed.R.Civ.P. 37(c)(2). Although the Rule was renumbered, the language remains unchanged.

3. Dissatisfaction with high costs and obstructionist tactics led to the passage of the 1993 amendments to the Federal Rules. These include new automatic disclosure requirements under Rule 26(a)(1)–(4). "The litigants should not indulge in gamesmanship with respect to the disclosure obligations." Fed.R.Civ.P. 26, Advisory Committee Notes on 1993 Amendment.

*al Rules, the Adversary Process, and Discovery Reform,* 50 U.Pitt.L.Rev. 703, 721 (1989). In this case, Farris gave misleading answers to requests for admission that significantly affected the cost of Marchand's prosecution and contravened the goal of full discovery.

### A. Standard of Care

■ Request for admission 26 asked Farris to

[a]dmit that the care and treatment provided to Kevin Marchand at the Mercy Medical Center on March 13, 1987, and March 14, 1987, by Neil K. Farris, D.O., failed to comply with the applicable standard of care which existed for that person on that date.

He responded, "denied."[4]

Farris argues that Rule 37(c) sanctions should not have been imposed because he had "reasonable ground to believe" that he might prevail on the negligence issue. Fed.R.Civ.P. 37(c)(3). He notes accurately "that the true test under Rule 37(c) is not whether a party prevailed at trial but whether he acted reasonably in believing that he might prevail." Fed.R.Civ.P. 37(c), Advisory Committee Notes on 1970 Amendment. This reasonable ground, he urges, was supported by expert testimony that he complied with the standard of care. *See Dyer v. United States,* 633 F.Supp. 750, 759 (D.Or.1985), *aff'd on other grounds,* 832 F.2d 1062 (9th Cir.1987) (defendant entitled to rely on expert testimony to deny difficult request for factual admission).

Dr. Carlson testified as an expert on behalf of Farris. He said that Farris satisfied the standard of care in all respects. Other experts testified that the number and type of x-rays taken complied with the standard of care.

Despite this evidence, we cannot accept a per se rule that reliance on an expert opinion provides a reasonable ground for a party to believe he would prevail at trial. The district court had ample evidence to discredit the expert testimony, as well as that of Farris. Critical to both were the trial statements of

Farris that he removed the cervical collar supporting Marchand's neck due to respiratory distress, and that he cleared Marchand's cervical spine as being within normal limits based on the x-rays and consultation with radiologist Dr. Walker. Scant trial testimony or evidence corroborated either assertion.

Moreover, Carlson's trial testimony was contradicted by his deposition statement that no event after Marchand was intubated warranted removal of the neck immobilization devices. And Farris testified in his deposition that an emergency room physician should not remove the cervical collar before obtaining a series of cervical spine x-rays.

Perhaps most damaging was Farris's belated admission that he removed the cervical collar. In his deposition he said that "[t]he patient went to the intensive care unit, to the best of my recollection, with the · cervical collar and sandbags." At trial he conceded that he removed the cervical collar in the radiology department before a complete series of cervical spine x-rays was obtained.

The district court concluded that Farris, knowing he removed the cervical collar before obtaining a full series of cervical spine x-rays, could not under the circumstances have reasonably denied his negligence. It applied the correct legal standard, and did not abuse its discretion. *Rahm,* 993 F.2d at 1410.

### B. Removal of Spine Support

■ Request for admission 24 asked Farris to

[a]dmit that the devices utilized prior to his admission on March 13, 1987, to immobilize Kevin Marchand's spine were removed subsequent to his admission at Mercy Medical Center.

He responded:

Defendants object to this Request for Admission on the grounds that the Request is vague and ambiguous. Without waiving such objection, Defendants admit that certain devices which have the tendency to lessen the mobility of portions of Kevin Marchand's spine were removed after he entered Mercy Medical Center.

---

**4.** Rule 36(a) permits requests for admission addressing questions of mixed law and fact. Fed.

R.Civ.P. 36, Advisory Committee Notes on 1970 Amendment.

The district court found that in light of his admission at trial that he did remove the cervical collar, Farris had no reasonable basis not to admit that he removed the immobilization devices. But the request did not ask who removed the immobilization devices. A party may only be sanctioned for failing to admit "the truth of any matter as requested." Fed.R.Civ.P. 37(c). As Farris answered the question asked, sanctions were not warranted.

## C. Causation

Requests for admission 1–6 asked Farris to admit that Marchand's quadriplegia was caused by movement of his spine that could have been avoided if proper immobilization had been maintained after he was admitted. Farris answered similarly to each question. In response to request for admission 1 he said:

> Defendants object to this Request for Admission on the grounds that it is compound, ambiguous, and because the use of the phrase "avoidable movement" is vague and undefined. Without waiving such objections, the Request for Admission, couched in its present form, must be denied.

The district court reasoned that Farris could not deny that the quadriplegia would have been avoided had Marchand's spine been immobilized, when Farris obviously knew he had removed the collar.

■ Farris seeks to excuse his failure to admit because he objected to the requests as compound, ambiguous and vague. Fed. R.Civ.P. 37(c)(4).[5] He argues that Marchand's failure to move for an order concerning the objection, "should bar him from subsequently recovering expenses." Note, *Proposed 1967 Amendments to the Federal Discovery Rules*, 68 Col.L.Rev. 271, 294 n. 169 (1968). *See also* 8 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2290 at 804 n. 87 (1970) ("court[s] should consider [an objection] a 'good reason' for failure to admit and hold that it falls

within condition (4) of Rule 37(c)"). We disagree.

■ Counsel routinely object to discovery requests. It would be unduly burdensome to require each and every objection to be challenged in order for sanctions to issue. And to aid the quest for relevant information parties should not seek to evade disclosure by quibbling and objection. They should admit to the fullest extent possible, and explain in detail why other portions of a request may not be admitted. *See Holmgren v. State Farm Mutual Automobile Insurance Company*, 976 F.2d 573, 579–81 (9th Cir. 1992) (expenses awarded under Rule 37(c) for failure to properly qualify denials).

Farris could have provided frank answers to these requests, which were clearly designed to establish causation. *See Washington State Physicians Insurance Exch. and Ass'n v. Fisons Corp.*, 122 Wash.2d 299, 858 P.2d 1054, 1084 (1993) (rejecting argument that discovery request was not specific enough); *Milgram Food Stores, Inc. v. United States*, 558 F.Supp. 629, 636 (W.D.Mo. 1983) (if party unable to agree with exact wording of request for admission, it should agree to an alternate wording or stipulation). Or he could have "set forth in detail the reasons why [he could not] truthfully admit or deny the matter." Fed.R.Civ.P. 36(a). He did neither, relying on unfounded objections to the wording, instead of admitting the uncontestable question: were Marchand's injuries caused by movement of the spine that could have been avoided had proper immobilization been maintained?

■ The record shows he had no reasonable basis to deny that question. Marchand's expert testified at trial that paralysis would not have occurred if he had been properly immobilized. Farris did not cross-examine the expert, and presented no experts to challenge causation.

He relies on the deposition of another expert to establish a reasonable belief that he might prevail on the causation issue. But that witness agreed with Marchand that

---

**5.** Farris also argues that these requests were of no substantial importance. Fed.R.Civ.P. 37(c)(2). But causation was a critical element,

even if the request alone was not enough to establish liability absent proof of the other elements.

there was a greater than 50 percent chance that Marchand would not have become paralyzed had he been properly immobilized before the onset of paralysis at the hospital. And Farris presents no other evidence that could reasonably support his denial of causation. The district court did not err.

### D. Fee and Cost Calculation

■ When Farris refused to admit, Marchand was put to the expense of proving negligence and causation. He may recover "the reasonable expenses incurred in making that proof." Fed.R.Civ.P. 37(c); *Comeaux*, 915 F.2d at 1275 (expenses include fees and costs "incurred in proving the truth of a matter where the other party refused to admit the matter"). Ordinarily we would remand for a recalculation of the expenses that flowed directly from the improper answers to the negligence and causation requests. This calculation would exclude those expenses claimed for the proper admission that the neck support was removed. But the removal request is subsumed in the negligence request. Any work done to discover who, when, where and why the neck support was removed, would also have been done to prove that Farris was negligent. So all claimed expenses for the removal of the collar also flowed directly from the denial of negligence.[6] No remand is necessary.

■ Farris argues that Marchand failed to establish sufficient causal nexus between the awarded expenses and his failure to admit. He primarily asserts that no additional expenses flowed from his answers because Marchand would have had to prove these issues against the other defendants.

But the claims against other defendants do not protect Farris from sanctions for his unreasonable conduct. More importantly, had Farris admitted negligence and causation, Marchand would have been relieved of proving a significant portion of his case, but not all of it. Accordingly, his petition sought only one-half to one-third of the hours that were only partially dedicated to Farris.

The court's calculation was reasonable. The hours requested comprised 25% of the total hours spent on the case, which is appropriate in light of the pivotal nature of the requests for admission on negligence, causation, and whether the immobilization devices were removed. The request was not rubber stamped. The district judge reduced the requested hourly fee, which lowered the fee award from $350,000 to $156,360. The calculation of $49,438.34 in costs was well supported. The award of $205,798.34 in fees and costs was well within the discretion of the district court.

The judgment is **AFFIRMED**.

---

6. These expenses include the pursuit of alternate theories of liability against other defendants oc-casioned by Farris's failure to admit he was negligent based on his removal of the collar.