## In re PACIFIC ENTERPRISES SECURITIES LITIGATION.

**Lee J. PRINCIPE; Ken Rudd; Steven Friedland; Myra Friedland; Leonard Held; Pisnoi Lumber & Trim Co., Inc. Pension Trust; Charles Thomas Miller; William Steiner; Pacific Enterprises, by Pisnoi Lumber & Trim Co., Inc. Pension Trust; Sheldon Shore; Edith Citron; William P. Anglim; W.M. Rogers, Executor of the Estate of Lydia P. Rogers; Eric J. Kakofsky; Herbert L. Eisen; James Foxwell; Martin Seltzer; Marjorie Seltzer, as Joint Tenants Shareholders Suing Derivatively and on its behalf, Plaintiffs–Appellees,**

v.

**James R. UKROPINA; Willis B. Wood, Jr.; Hyla H. Bertea; Herbert L. Carter; James F. Dickason; Wilford D. Godbold, Jr.; Ignazio C. Lozana, Jr.; Harold M. Messmer, Jr.; Paul A. Miller; Joseph N. Mitchell; Joseph R. Rensch; Rocco C. Siciliano; Leonard H. Straus; Daniel G. Volkmann, Jr.; Diana L. Walker; James H. Zumberge; Stanley A. Ratzlaff; Pacific Enterprises; Deloitte & Touche, Defendants–Appellees,**

v.

**Sam WEINSTEIN, Appellant.**

No. 94–55935.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 1994.

Decided Feb. 9, 1995.

---

1. The result is also consistent with *United States v. Juda,* 46 F.3d 961 (9th Cir.1995), filed February 2, 1995.

Richard G. McCracken, Davis Cowell & Bowe, San Francisco, CA, for objector-appellant.

William S. Lerach & William S. Dato, Milberg Weiss Bershad Hynes & Lerach, San Diego, CA, for plaintiffs-appellees.

Richard H. Borow, Irell & Manella, Raymond C. Fisher, Heller, Ehrman, White & McAuliffe, James E. Lyons, Skadden, Arps, Slate, Meagher & Flom, John C. Morrissey, McCutchen, Doyle, Brown & Enersen, William W. Vaughn, O'Melveny & Myers, Los Angeles, CA, for defendants-appellees.

Before: FARRIS, POOLE and KOZINSKI, Circuit Judges.

FARRIS, Circuit Judge:

The district court approved a simultaneous settlement of a derivative class action lawsuit and a securities class action lawsuit. Weinstein, one of the derivative plaintiffs, contests the derivative settlement only. The questions are whether the district court 1) had jurisdiction over the derivative plaintiffs' claims, 2) properly responded to Weinstein's settlement objections, or 3) abused its discretion by approving the settlement and the award of attorneys' fees. We affirm.

## I. FACTS

Pacific Enterprises was once a successful gas distribution utility company. In the late 1980s it tried to diversify its business by acquiring the Thrifty store chain, an oil and gas exploration company, and a number of retail drug store chains. The diversification program, as described by the district court, was "incredibly bad." By 1992 Pacific Enterprises sold all of its non-utility assets and restructured its operations at a loss of approximately $750 million. It also eliminated its dividend for the first time in eighty years.

According to Weinstein Pacific Enterprises's management later revealed their rationale for diversification. They feared that the SEC would limit utility holding company diversification. Weinstein alleges that by rapidly diversifying management hoped to present regulators with transactions so hard to unscramble that the company's diversification would be permitted through "grandfather" exemptions.

Shareholders filed several derivative lawsuits in Los Angeles Superior Court against the company's former officers and directors. The lawsuits challenged the company's diversification acquisitions and their subsequent mismanagement. The derivative suits also alleged that management, in an attempt to improve the appearance of Pacific Enterprises's bottom line, wasted corporate assets by rapidly drawing down oil and gas reserves despite low market prices. Shareholders later brought derivative claims against the company's auditors, Deloitte & Touche, who had certified the allegedly misleading financial statements. The state court consolidated these lawsuits and appointed attorneys from Milberg Weiss Bershad Specthrie & Lerach and Spector & Roseman to be co-lead counsel. Weinstein and members of his union who owned stock in Pacific Enterprises joined the derivative lawsuit, accepting Milberg Weiss as co-lead counsel.

Shareholders who purchased stock between June 5, 1990, and February 4, 1992, filed several security class action lawsuits in federal court. They eventually consolidated their claims and added Deloitte & Touche as a defendant. The federal court appointed Milberg Weiss; Barrack, Rodos & Bacine; and Wolf Popper Ross Wolf & Jones as co-lead counsel. Defendants moved to dismiss the securities claims. Although Judge Letts never entered an order on these motions, he held a hearing where he indicated that many defendants were "probably going to win" on summary judgment.

Aided by two settlement mediators, Judge Tevrizian and Judge Irving, the parties reached a global settlement of all federal and state actions. To settle the derivative lawsuit, the parties agreed that Pacific Enterprises would receive $12 million from its officers' and directors' insurers and Deloitte & Touche. Attorneys for the derivative plaintiffs would receive $8 million out of this $12 million award. The derivative settlement would also require Pacific Enterprises to resume its dividend and to enact restrictions on future diversifications. To settle the securities lawsuit, Pacific Enterprises would pay $21 million and the insurance companies would pay $12 million into a settlement fund. Final approval of both settlements are conditioned on the defendants' demand that the two settlements be linked. If either settlement is vacated, both settlements are void.

Weinstein objected to the proposed derivative settlement. He argued that the district court did not have jurisdiction over the derivative claims and that the proposed derivative settlement would be unjust. Over 1700 shareholders joined his objections. Many

joinders came from current and former employees. Non-employee objectors included Wells Fargo Bank, GE Investments, IDS, Continental Trust, and Connecticut General Life Insurance. Many more shareholders might have joined Weinstein except that the notice of settlement did not inform shareholders that Pacific Enterprises was paying for most of the securities settlement.

At the settlement hearing, the district court announced that it was satisfied with the total recovery on the derivative claims. Judge Letts stressed that he was relying primarily on the judgment of counsel involved. Nevertheless, he agreed with Weinstein that an $8 million fee award for the derivative attorneys appeared excessive. Judge Letts concluded the settlement hearing by indicating that he intended to hire an independent expert to examine the value of the non-monetary elements of the derivative settlement. Without further hearings or explanatory filings, on May 5, 1994, plaintiffs' counsel reduced their derivative fee request from $8 million to $4 million, and Judge Letts approved the global settlements and dismissed both actions.

## II. DISTRICT COURT JURISDICTION OVER DERIVATIVE LAWSUIT

■ Weinstein raises two arguments contesting the district court's jurisdiction over the derivative lawsuit. We review legal issues concerning jurisdiction *de novo. See Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.,* 20 F.3d 987, 990 (9th Cir.1994).

Weinstein contends that amending the federal lawsuit to include the state derivative lawsuit violated our decision in *American Int'l Underwriters, Inc. v. Continental Ins. Co.,* 843 F.2d 1253 (9th Cir.1988). In *American Int'l Underwriters,* we held that a plaintiff may not file a lawsuit in state court and

then file the same lawsuit in federal court. Filing the "repetitive lawsuit" was an attempt to circumvent the federal removal statute, 28 U.S.C. § 1441, which does not grant a right of removal to plaintiffs. *American Int'l Underwriters,* 843 F.2d at 1260–61. Weinstein contends that by amending the federal complaint "plaintiffs are essentially removing the state-law case to federal court." [1]

■ The rationale for our decision in *American Int'l Underwriters* does not apply to this case. The derivative lawsuit plaintiffs were not attempting to circumvent the removal statute and continue their lawsuit in federal court. Rather, they sought to refile in federal court to end the litigation. The district court's order expressly provided that the refiling was "for settlement purposes only." Extending the holding in *American Int'l Underwriters* would waste judicial resources and create an arbitrary barrier to settlement negotiations. Thus, plaintiffs may refile their case in federal court, even if they previously filed the identical case in state court, if that refiling permits the parties to immediately settle their lawsuit.

■ Weinstein also contends that Fed. R.Civ.P. 23.1(2) does not permit the parties to bring the derivative action into federal court. Rule 23.1(2) provides that shareholders may not bring a derivative action in federal court if the action is "a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have." Weinstein argues that the derivative settlement was a collusive agreement between the plaintiffs and defendants and that this collusive agreement allowed the parties to circumvent the federal removal statute.[2] The record does not support the argument. Although Milberg Weiss may have had a conflict of interest representing both derivative

---

1. Weinstein acknowledges that the district court had subject matter jurisdiction over the state-law derivative claims pursuant to 28 U.S.C. § 1367(a), but contends that jurisdiction was barred by the federal removal statute.

2. Weinstein also argues that "[i]n the absence of such collusive agreement with defendants, the federal courts would have granted a motion to dismiss the newly added state-law claims under

the doctrine of abstention under *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)." In the absence of the agreement, however, the district court would not have allowed the parties to refile the derivative lawsuit in federal court. Because this is a hypothetical argument, we do not consider it.

and securities plaintiffs, an issue we do not decide here, there is no evidence that the plaintiffs and defendants colluded during settlement negotiations.

## III. APPROVAL OF THE DERIVATIVE SETTLEMENT

Weinstein raises three objections to the district court's approval of the settlement: The district court failed to provide formal findings of fact and conclusions of law in response to his objections; the $12 million recovery in the derivative settlement was insufficient; and the attorneys' fee award in the derivative lawsuit was excessive.

### A. DISTRICT COURT'S RESPONSE TO WEINSTEIN'S SETTLEMENT OBJECTIONS

Weinstein alleges that the district court failed to respond to his settlement objections with specific findings of fact and conclusions of law as required by *Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 836 (9th Cir.1976) (2–1 decision). In *Mandujano* we held that Rule 23(e) requires, in addition to notice of the proposed settlement and a hearing on any substantive objections, a "reasoned response" in the record to settlement objections. *Id.* at 835–36. The court in *Mandujano* also stated that "[s]uch findings of fact and conclusions of law as may be necessary to support the response must also appear on the record." *Id.* at 836.

■ In virtually every case since *Mandujano*, we have refused to remand a settlement even though the district court did not respond to settlement objections with findings of fact and conclusions of law.[3] We hold that in a Rule 23.1 derivative action, a district court that does not respond to objections with findings of fact and conclusions of law must provide a reasoned response elsewhere in the record. Judge Letts has satisfied this procedural requirement. In his or-

der approving the settlement, he stated that the settlement is "fair, reasonable and adequate to Pacific Enterprises and its shareholders." This conclusory statement alone would not be satisfactory, but the record reflects that Judge Letts also held an extensive settlement hearing where he responded to Weinstein's objections and explained why the derivative settlement is fair. For example, he stated that the derivative lawsuit would be very difficult to win and that the lawsuits would expose Pacific Enterprises to a substantial risk of bankruptcy. Judge Letts also responded to Weinstein's objections about the attorneys' fee award and ultimately lowered the award from $8 million to $4 million. The entire session is of record, and is a sufficient reasoned response to Weinstein's objections.

### B. ADEQUACY OF THE DERIVATIVE RECOVERY

■ Under Fed.R.Civ.P. 23(e), the district court determines whether a proposed settlement is "fundamentally fair, adequate, and reasonable." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir.) (quotation omitted), *cert. denied*, —— U.S. ——, 113 S.Ct. 408, 121 L.Ed.2d 333 (1992). Weinstein contends that the district court should have rejected the $12 million derivative settlement because it is unjust in light of the potential derivative recovery (allegedly over $1 billion) and compared to the securities settlement ($33 million). We will reverse a district court's approval of a settlement "only upon a strong showing that the district court's decision was a clear abuse of discretion." *Id.* (quotation omitted).

■ We affirm. Judge Letts applied a proper legal standard and his findings of fact were not clearly erroneous. *See Marchand v. Mercy Medical Ctr.*, 22 F.3d 933, 936 (9th Cir.1994). His conclusion that the settlement

---

**3.** *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1378–79 (9th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2707, 129 L.Ed.2d 834 (1994); *Zarowitz v. BankAmerica Corp.*, 866 F.2d 1164, 1166 (9th Cir.1989) (per curiam), *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1179 (9th Cir.1977); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir.1982)

(dictum). In two cases we have remanded where the district court provided "no inquiry" into the shareholders' objections. *Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985); *see also Saunders v. Naval Air Rework Facility*, 608 F.2d 1308, 1311 (9th Cir.1979) (holding that there was no record of a hearing about settlement objections).

was "fair, reasonable and adequate to Pacific Enterprises" was based on evidence in the record. Even if the potential recovery might have been large, the odds of winning the derivative lawsuit were extremely small. California's statute of limitations for breach of fiduciary duty and the Special Litigation Committee's recommendation not to pursue the derivative lawsuit may have adversely terminated the litigation before trial. Even if it had gone to trial, derivative lawsuits are rarely successful.[4] Judge Letts found that the settlement eliminated significant risk. Based on the record, he concluded that continued litigation could have forced Pacific Enterprises into bankruptcy. Finally, Judge Letts relied on independent assessments by Debevoise & Plimpton, a law firm hired by Pacific Enterprises to evaluate the derivative settlement, and by one of the settlement mediators, retired district judge J. Lawrence Irving. Both Debevoise & Plimpton and Judge Irving concluded that the settlement of the derivative claims is in the best interests of Pacific Enterprises and its shareholders. The district court did not clearly abuse its discretion.

■ When reviewing complex class action settlements, we have a "strong judicial policy that favors settlements." *Class Plaintiffs*, 955 F.2d at 1276. Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation. If, however, the settlement negotiations are biased, or skewed by a conflict of interest, we cannot presume that the attorneys have reached a fair settlement. Thus, a district court may not approve a proposed settlement if it is "the product of fraud or overreaching by, or collusion among, the negotiating parties." *Id.* at 1290.

As part of their negotiating strategy, the defendants demanded that the two settlements be linked. This raises concerns about the fairness of the derivative settlement. Weinstein contends that individual defendants and the corporation may have used the derivative lawsuit to settle the securities claim. *See In re Oracle Sec. Litig.*, 829 F.Supp. 1176, 1183–84 (N.D.Cal.1993). We recognize that linking the two settlements may give individual defendants an incentive to offer a generous settlement against the corporation in exchange for a small derivative lawsuit recovery. John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions*, 86 Colum.L.Rev. 669, 718–719 (1986). Arguably the derivative shareholders receive nothing from the settlement because all of the proceeds from the insurance companies go to the securities plaintiffs.

Weinstein also argues that the linked settlement is biased because Milberg Weiss had a conflict of interest in representing both the derivative plaintiffs and the securities plaintiffs. We have carefully considered the argument. Although Spector & Roseman were co-lead counsel for the derivative plaintiffs, the record suggests that Milberg Weiss conducted most of the settlement negotiations for the derivative plaintiffs. Weinstein alleges that because of a conflict of interest, Milberg Weiss was willing to accept a lower derivative settlement so long as the class action produced a large recovery.[5]

We are concerned about the potential conflicts created by the linked settlement and by Milberg Weiss's dual representation of derivative and securities plaintiffs, but Weinstein failed to raise these issues at any time prior to his appeal. *See United States v. Flores–Payon*, 942 F.2d 556, 558 (9th Cir.1991). A timely objection could have been properly evaluated *before* extensive settlement negotiations were concluded.

## C. ATTORNEYS' FEE RECOVERY IN DERIVATIVE LAWSUIT

Attorneys for the derivative plaintiffs requested attorneys' fees of $8 million out of

---

4. *See* Thomas M. Jones, *An Empirical Examination of the Resolution of Shareholder Derivative and Class Action Lawsuits*, 60 B.U.L.Rev. 542, 544–45 (1980) (finding class action and derivative lawsuits resulted in judgment for the plaintiffs in less than one percent of cases).

5. During oral argument, counsel for the individual defendants admitted that total insurance coverage was approximately $120 million.

the derivative settlement of $12 million. The attorneys later lowered their request to $4 million, which the district court approved. Weinstein contends that the attorneys should not receive any fees because of the low recovery in the derivative lawsuit.

■ We review a district court's award of attorneys' fees for abuse of discretion. *In re Washington Pub. Power Supply Sys. Litig.,* 19 F.3d 1291, 1296 (9th Cir.1994). Twenty-five percent is the "benchmark" that district courts should award in common fund cases. *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990). The district court may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate. *Id.*

■ The attorneys for the derivative plaintiffs contend that a $4 million award (thirty-three percent) for attorneys' fees is justified because of the complexity of the issues and the risks. They also argue that the derivative settlement does not reflect the nonmonetary benefits in the derivative settlement. Pacific Enterprises has agreed to resume its dividend and to enact restrictions on future Pacific Enterprises diversifications. Weinstein failed to respond to these arguments.[6] We cannot conclude, on this record, that the district court's award of fees was an abuse of discretion.

**AFFIRMED.**

---

6. In his reply brief, Weinstein argued for the first time that class counsel may not negotiate for their fees while bargaining for class relief. *Jeff D. v. Evans,* 743 F.2d 648 (9th Cir.1984). Because Weinstein did not raise this issue in his opening brief, we do not consider it.