In re MEDICAL EDUCATIONAL & HEALTH SERVICES, INC., Debtor(s).

Mayaguez Medical Center Dr. Ramon Emeterio Betances, Inc., Appellant(s),

v.

Medical Educational & Health Services, Inc., Sistemas Integrados De Salud Del Sur Oeste, Inc. (Sisso); Mayaguez Advanced Radiotherapy, Inc.; Municipality of Mayaguez; Manati Medical Center, Inc.; Jose Guillermo Rodriguez; Marisela Mora Gonzalez; Dr. Orlando Marini; Jose Quiros, Appellee(s),

U.S., Trustee.

Civil Nos. 12–1620 (DRD), 12–1619, 12–1618, 12–1680.
Bankruptcy No. 10–04905 (BKT).
Adversary Nos. 10–146, 10–148, and 10–150(BKT).

United States District Court, D. Puerto Rico.

Sept. 30, 2013.

Jorge I. Peirats, Pietrantoni Mendez & Alvarez, San Juan, PR, for Appellant.

Jorge I. Peirats, Pietrantoni Mendez & Alvarez, Nelson Robles–Diaz, Nelson Robles–Diaz Law Offices P.S.C., Rafael Gonzalez–Velez, Gonzalez Velez Law Office, San Juan, PR, for Appellees.

## OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

Pending before the Court are four appeals filed separately and assigned to different judges, to wit, Civil No. 12–1618; 12–1619; 12–1620 and 12–1680, and consolidated with Civil No. 12–1620(DRD), upon request of counsel. *See* Civil No. 12–1620, Docket No. 5. The consolidated appeals have one fact in common, that is, all the appeals stemmed from the same *Opinion and Order* which was entered in the three adversary proceedings, Adv. Proc. 10–146,

10–148 and 10–150.[1] *See Opinion and Order* of March 12, 2012, and the *Partial Judgment* entered on even date, Civil No. 12–1620, Docket entries No. 1–22 and 1–23. The Court, however, is cognizant that the factual background varies amongst the three adversary proceedings. For the reasons set forth below, the decision of the bankruptcy court is affirmed, and this matter is remanded for further proceedings.[2]

### Jurisdiction

This Court has jurisdiction to entertain the appeal referred from the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1).

### Standard of Review

 The district court reviews a bankruptcy appeal rulings of law *de novo* and findings of fact for clear error. *In Re Redondo Construction Corporation v. Puerto Rico Highway and Transportation Authority,* 700 F.3d 39, 41–42 (1st Cir. 2012); *Prebor v. Collins (In re I Don't Trust)* 143 F.3d 1, 3 (1st Cir.1998); *Jeffrey v. Desmond,* 70 F.3d 183, 185 (1st Cir. 1995). "Under an abuse of discretion standard, a reviewing court cannot reverse unless it has a 'definite and firm conviction that the court below committed a clear error of judgment' in the conclusion it reached upon a weighing of the relevant factors." *In re Hosseinpour–Esfahani, et al.,* 198 B.R. 574, 577 (9th Cir. BAP 1996), citing *Marchand v. Mercy Medical Ctr.,* 22 F.3d 933, 936 (9th Cir.1994). "Evidentiary rulings by the bankruptcy court are subject to the 'abuse of discretion' standard." *Williamson v. Busconi,* 87 F.3d 602, 603,

n. 4 (1st Cir.1996), citing *United States v. Cotto–Aponte,* 30 F.3d 4, 6 (1st Cir.1994).

 "The standard of review on this appeal requires that we respect, unless 'clearly erroneous,' all findings of fact by the bankruptcy court, which includes any finding of actual reliance and any raw fact findings pertinent to the issue of justifiable reliance. *Brandt v. Repco Printers & Lithographics, Inc.,* 132 F.3d 104, 107–08 (1st Cir.1997)." *In re Spadoni,* 316 F.3d 56, 58 (1st Cir.2003). "A court reviewing a decision of the bankruptcy court may not set aside findings of fact unless they are clearly erroneous, giving 'due regard … to the opportunity of the bankruptcy court to judge the credibility of the witnesses.' (Citations omitted)." *Palmacci v. Umpierrez,* 121 F.3d 781, 785 (1st Cir.1997).

 "A finding of fact is clearly erroneous, although there is evidence to support it, when the reviewing court, after carefully examining all the evidence, is 'left with the definite and firm conviction that a mistake has been committed.' " *Palmacci,* 121 F.3d at 785, citing *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). "Deference to the bankruptcy court's factual findings is particularly appropriate on the intent issue '[b]ecause a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor.' " *Id.* citing *In re Burgess,* 955 F.2d 134, 137 (1st Cir.1992). "Particular deference is also due to the

---

1. *Mayaguez Medical Center–Dr. Ramón Emeterio Betances, Inc. v. Debtor/Medical Educational and Health Services, Inc.,* Adv. Proc. No. 10–146(BKT); *Debtor/Medical Educational and Health Services, Inc. v. Municipality of Mayaguez;* José Guillermo Rodríguez; Marisela Mora González; Dr. Orlando Marini; José Quirós; Mary Doe Quirós; Sistemas Integrados de Salud del Sur Oeste, Inc.; Mayaguez Medical Center; Manatí Medical Center, Adv. Proc. No. 10–148(BKT); *Mayaguez Medi-*

*cal Center v. Debtor/Mayaguez Advanced Radiotherapy Center,* Adv. Proc. No. 10–150(BKT).

2. The Court notes that this is the second time that the same debtor appears before this Court. *See In re Medical Educational & Health Services, Inc.,* 474 B.R. 44 (D.P.R. 2012).

trial court's findings that depend on the credibility of other witnesses and on the weight to be accorded to such testimony." *Id.* citing Fed.R.Bank.R. 8013; *Keller v. United States,* 38 F.3d 16, 25 (1st Cir. 1994).

## Issue

■ The issue before the Court is simple: whether the Bankruptcy Court erred when determining that the termination of the contract entered on August 27, 2009 by the Municipality of Mayaguez (hereinafter "Municipality") and Medical Educational and Health Services, Inc. (hereinafter "MEDHS"), is valid, as the alleged termination failed to comply with the terms and conditions of the contract.[3]

## Factual and Procedural Background

On June 3, 2010, debtor MEDHS filed for voluntary relief under Chapter 11 of the Bankruptcy Code, Bankruptcy No. 10–04905(BKT). The record shows that, on June 2, 2009, Mayaguez Advanced Radiotherapy Center, Inc. ("MARC") had filed for relief under Chapter 11, Bankruptcy No. 09–4540(BKT). The petitions filed by both MARC and MEDHS are directly intertwined. The Court notes that, as of September 28, 2013, a plan has not been confirmed in the MARC's bankruptcy case. Likewise, a plan has not been confirmed in the MEDHS' bankruptcy case.

Adv. Proc. No. 146 was filed on August 24, 2010 by plaintiff MMC against MEDHS, as a related proceeding in MARC's bankruptcy petition. Adv. Proc. No. 10–149 was filed on September 1, 2010 by debtor/plaintiff MEDHS against Municipality, José Guillermo Rodríguez; Marisela Mora González; Dr. Orlando Marini;

José Quirós; Mary Doe Quirós; Sistema Integrados de Salud del Sur Oeste Inc. ("SISSO"); MMC; Manatí Medical Center. Lastly, Adv. Proc. No. 10–150 was filed on September 16, 2010 by plaintiff MMC against debtor/defendant MARC. All three adversary proceedings stem from the August 27, 2009 Contract entered into by Municipality and MEDHS.

The bankruptcy court held:

Specifically, the disputed material fact was whether the termination of the August 27, 2009, Agreement for the Operation and Administration of the Hospital Ramón E. Betances, Mayaguez Medical Center [hereinafter "Contract"] between the Municipality of Mayaguez [hereinafter "Municipality"] and MEDHS was procedurally, contractually and legally valid. The Court concluded that this was a material fact in all three adversary proceedings. Therefore, a trial was scheduled and held in February 2012.

The Court hereby adopts *in toto* the findings of fact made by the bankruptcy court, as these findings are not contested by the parties, and the findings are generally based on the joint exhibits stipulated by the parties.

## FINDINGS OF FACT

After nine (9) days of testimony and the submission of documentary evidence from all parties, the following are the pertinent facts that were established:

1. On August 27, 2009, MEDHS and the Municipality entered into the Contract.

2. Sistemas Integrados de Salud del Sur–Oeste, Inc. [hereinafter "SISSO"], a for-profit corporation, guar-

---

**3.** The contract entered by the Municipality and MEDHS on August 27, 2009 is referred herein as the "Contract." All other contracts will be referred according to the parties that execute the particular contract, as well as the signing date of the corresponding contract.

anteed the performance of MEDHS' obligations under the Contract.

3. The Municipality delivered possession of the Mayaguez Medical Center Hospital [hereinafter "Hospital"] to MEDHS on August 31, 2009.

4. Pursuant to a Sublease Agreement between MEDHS and SISSO signed on September 1, 2009, the latter became administrator and operator of most of the Hospital.

5. MEDHS and SISSO entered into an informal and temporal agreement allowing SISSO to pay the rent due directly to the Municipality.

6. At the time when MEDHS and SISSO entered and took over the administration and operation of the Hospital, two of the six (6) floors were not income-generating due to their physical condition.

7. At no time when MEDHS and/or SISSO request that the Contract be terminated or amended.

8. During the first two months of the Contract, September 2009 and October 2009, MEDHS and SISSO paid the monthly rent obligation to the Municipality.

9. During the first months of the Contract, MEDHS contacted the Municipality on several different occasions and met with its representatives in order to discuss possible resolutions to the problems caused by the unusable floors, among other matters.

10. On November 6, 2009, representatives of the Municipality, MEDHS and SISSO held a meeting and according to the testimony of both Dr. Oestes Castellanos and Dr. Orlando Marini, the Municipality orally agreed to a moratorium of the rent effective immediately.

11. The rent payment for the month of November 2009, from SISSO to the Municipality, bounced twice, and then a "stop payment" was placed by SISSO on the check. Dr. Marini testified that the "stop payment" was requested due to the fact that it was his understanding that the rent moratorium had been granted which covered the rent for the month of November 2009.

12. On December 8, 2009, MEDHS was notified in writing of their failure to comply with their obligation under the Contract to pay the rent for the month of November 2009, and were given fifteen (15) days to cure the same. The letter cited Article 5.3 of the Contract and stated that the letter served as the notification required under that section.

13. The December 8, 2009 letter was not sent via certified mail as required under Article 5.3 of the Contract, nor was it mailed to the correct address as that was set forth in the Contract.

14. On December 8, 2009, Kermit Ortiz, the attorney for Mayaguez Medical Center–Dr. Ramón Emeterio Betances, Inc. [hereinafter "MMC"] sent a letter to the Mayor of Mayaguez, which set out certain terms and conditions for the purchase of SISSO stock. In that letter, Mr. Ortiz specifically requested a rent moratorium for six months on behalf of MMC, MEDHS and SISSO. The letter shows the signature of the Mayor "Agreeing and Authorizing" the requests made therein.

15. On January 14, 2010, MEDHS received a letter from César R. Mi-

randa, attorney for the Municipality, stating that MEDHS and SISSO were in breach ("incumplimiento") of the Contract and that the Municipality was going to act accordingly. Mr. César Miranda testified that in his opinion, this letter did not comply with the provisions of the Contract with regards to notification of a breach under Articles 5 or 10.

16. On January 28, 2010, the Mayor of Mayaguez sent a letter to MEDHS and SISSO in an effort to terminate the Contract due several breaches thereof, specifically failure to comply with Articles 5.3 (payment of rent) 6.2.2 (payment of utilities) 8.5(a) 1 and 8.5(a) 2 (capital investment and line of credit) and Article 9 (payment bond and insurance).

17. The January 28, 2010 termination letter from the Mayor did not comply with the address requirement stated in Article 14.2 of the Contract.

18. It was undisputed that the alleged breaches as to Articles 6.2.2 (payment of utilities) 8.5(a) 1 and 8.5(a) 2 (capital investment and line of credit) and Article 9 of the Contract (payment bond and insurance) mentioned in the January 28, 2010 letter, were not previously notified in writing to MEDHS/SISSO.

19. On January 29, 2010, the Municipality entered into a new contract for the administration and operation of the Hospital with MMC.

*See Opinion and Order,* Civil No. 12–1620, Docket No. 1–22, pages 2–5.

### Applicable Law and Discussion

The parties have moved the Court to review the bankruptcy court's final determination finding "that the attempted termination of the Contract by the Municipality was procedurally and legally invalid." *See Opinion and Order,* Civil No. 12–1620, Docket No. 1–22, page 9.

The bankruptcy court centered its analysis in the provisions of Puerto Rico contract law, "when the terms of the contract are clear, the literal terms of the same must be followed and honored by courts of law. Art. 1233, Puerto Rico Civil Code," 31 L.P.R.A. § 3471. *See Opinion and Order,* Civil No. 12–1620, Docket No. 1–22, page 5. Other provisions were also cited by the bankruptcy court, to wit:

Article 1042 of the Puerto Rico Civil Code, 31 L.P.R.A. § 2992 states that the obligations are created by law, by contracts, and quasi contracts, and by illicit acts and omissions in which a kind of fault or negligence occurs. Obligations arising from law are not presumed, and the provisions of the law, by contracts, and quasi contracts, and by illicit acts and omissions in which a kind of fault or negligence occurs. Obligations arising from law are not presumed, and the provisions of the laws, which may have established them, shall govern them. Article 1043 of the Civil Code, 31 L.P.R.A. § 2993.

. . .

Article 1210 of the Civil Code establishes that "[c]ontracts are perfected by mere consent, and from that time are binding, not only in regard to the fulfillment of what has been expressly stipulated, but with regards to all consequences which according to their character, are in accordance with good faith, use, and law." 31 L.P.R.A. § 3375.

*See Opinion and Order,* Civil No. 12–1620, Docket No. 1–22, page 5.

Under Puerto Rico law, 31 L.P.R.A. § 3391, "[t]here is no contract unless the following requisites exist: (1)[t]he consent of the contracting parties; (2)[a] definite object which may be the subject of the contract; (3)[t]he cause for the obligation which may be established." The Puerto Rico Civil Code further provides that, "[o]bligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations." 31 L.P.R.A. § 2994.

## The Contract

Based on these premises, the Court now reviews the relevant provisions of the Contract, to wit: (a) Article 5 related to the "Rent," specifically Article 5.2 "Form in which to Make Payments;" Article 5.3 "Default;"[4] (b) Article 10 related to the "Non–Compliance [Breach] and Contract Cancellation," specifically Article 10.1(a) "Events which Shall Constitute Non–Compliance by MEDHS,"[5] and (c) Article 14 related to "Miscellaneous Clauses," specifically Article 14.2 "Notifications and Communications."[6]

The Court defers to the bankruptcy court the conclusions reached as to the evidence received at trial, particularly as to the "[t]hree different explanations [that] were offered by the parties and their witnesses as to the difference between the fifteen (15) days notice requirement stated in Article 5.3 and the thirty (30) days notice requirement stated in Article 10.1(a) [of the Contract]." *See Opinion and Order*, Civil No. 12–1620, Docket No. 1–22, page 7. The bankruptcy court further held that:

Therefore, the contractual provisions of the Contract between MEDHS and the Municipality defined and controlled the legal relationship between these two parties. Here, the Contract executed between the Municipality and MEDHS includes clear, specific, and unambiguous provisions regarding the procedure to be followed in case of default in rent payments, and in order to terminate the Contract for default in payment of monies owed to the Municipality by MEDHS. Article 5.3 of the Contract specifically requires notification to MEDHS, in writing, sent via certified mail, to a certain address that is stated specifically thereat, in the event of non-compliance with Articles 5.1 and 5.2. Upon receipt of this notification, MEDHS would have fifteen (15) days to cure the noticed default.

The December 8, 2009 letter did not comply with Article 5.3 of the Contract because it was not sent via certified mail, and was not sent to the correct address as it was set forth in the Contract. The January 14, 2010 letter did not comply with Articles 5.3 or 14.2 because it was not sent to the correct address that was specified in the Contract. The January 28, 2010 letter did not comply with Article 14.2, because it was sent to a different address from the one specified in the Contract.

Article 10.1(a) of the Contract allowed MEDHS thirty (30) days to cure a noncompliance with regards to payment of rent, following written notification by the Municipality. However, neither the

---

4. Due to the length of Article 5, the Court makes reference to the record, *see* Civil No. 12–1620, Docket No. 16–12, pages 21–23.

5. Due to the length of Article 10, the Court makes reference to the record, *see* Civil No. 12–1620, Docket No. 16–12, pages 37–40.

6. Due to the length of Article 14, the Court makes reference to the record, *see* Civil No. 12–1620, Docket No. 16–12, pages 45–46.

December 8, 2009 letter nor the January 14, 2010 letter mentioned the Article 10.1(a) time period. Three different explanations were offered by the parties and their witnesses as to the difference between the fifteen (15) days notice requirement stated in Article 5.3 and the thirty (30) days notice requirement stated in Article 10.1(a). For purposes of this Opinion, the correct interpretation of the clauses related to the time frames provided in Articles 5 and 10 is irrelevant. [As one was not certified and the other was not sent to the correct address, as provided in the Contract, hence, the terms are irrelevant].

*See Opinion and Order,* Civil No. 12–1620, Docket No. 1–22, pages 6–7.

■ After a *de novo* review of the bankruptcy court conclusions of law, the Court wishes to add that, "a court may not consider extrinsic evidence at all, if it finds that the terms of an agreement are clear." *In re Advanced Cellular Systems, Inc.,* 483 F.3d 7, 12–13 (1st Cir.2007), citing *Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo, Inc.,* 96 F.3d 10 (1st Cir.1996); *Vulcan Tools of P.R. v. Makita U.S.A., Inc.,* 23 F.3d 564, 567 (1st Cir.1994). "An agreement is clear when it can 'be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation.'" *Id.,* citing *Catullo v. Metzner,* 834 F.2d 1075, 1079 (1st Cir.1987). "Therefore, extrinsic evidence is not admissible to assist in the interpretation of the provision." *Id.,* citing *Mercado–Garcia v. Ponce Fed. Bank,* 979 F.2d 890, 894 (1st Cir.1992). Similarly it is affirmed, "the exclusion of extrinsic evidence of a party's attempt to accommodate the other by not enforcing clear contractual terms." *Id.,* citing *Executive Leasing Corp. v. Banco Popular de P.R.,* 48 F.3d 66, 69 n. 5 (1st Cir.1995). When "the meaning of the of the contract at issue was

clear on its face, the party's subsequent conduct was not admissible to alter the contract's unambiguous terms." *Advanced Cellular Systems, Inc.,* 483 F.3d at 12–13. *See also López & Medina Corp., d/b/a Emmanuel Travel & Tours v. Marsch USA, Inc., et al.,* 667 F.3d 58, 64– 65 (1st Cir.2012).

■ The issue brought by appellant *López & Medina Corp.,* 667 F.3d at 64–65, involves the interpretation of the provisions of an insurance policy, as opposed to the instant case wherein the Contract is a management and operations agreement entered into by the Municipality and MEDHS. Notwithstanding, the United States Court of Appeals for the First Circuit ("First Circuit"), made reference to the general contract provisions of the Puerto Rico Civil Code as a "supplemental source of law," specifically to 31 L.P.R.A. 3471. 667 F.3d at 64–65. But "[a] term is considered 'clear' when it is sufficiently lucid to be understood to have one particular meaning, without room for doubt." *Id.,* citing *Jimenez v. Triple S. Inc.,* 154 F.Supp.2d 236, 238 (D.P.R.2001) (quoting *Hopgood v. Merrill Lynch, Pierce, Fenner & Smith,* 839 F.Supp. 98, 104 (D.P.R.1993). The First Circuit held in *Lopez & Medina Corp.,* 667 F.3d at 64, "[h]owever, we are **cognizant that where a contract's wording is explicit and its language unambiguous, the parties are bound by its clearly stated terms and conditions, with no room for further debate.** *Nieves v. Intercontinental Life Ins. Co. of P.R.,* 964 F.2d 60, 63 (1st Cir.1992); *see also Vulcan Tools of P.R. v. Makita U.S.A., Inc.,* 23 F.3d 564, 567 (1st Cir.1994) (**where no doubt or ambiguity lies amidst the meaning of a contract's terms, 'the court cannot dwell on the "alleged" intent of the parties at the time they entered into the contract'** (quoting *Hop-*

*good,* 839 F.Supp. at 104)))." (Emphasis ours). 667 F.3d at 12–13.

The Court further finds that the law is bound to be strictly followed, specially when, as in this case, the law and the contract in question is clear and unambiguous. The Court harbors no doubt that the bankruptcy court committed no error in concluding that the notices provided were insufficient pursuant to the terms of the Contract, and hence, the Contract continues to be in effect.

### Conclusion

For the reasons stated above, the *Opinion and Order* of March 12, 2012 issued by the Hon. Brian K. Tester, United States Bankruptcy Judge, is affirmed. The matter is remanded to the bankruptcy court for further proceedings, if any are pending. Judgment will be entered accordingly.

IT IS SO ORDERED.