**In re BORICUA MOTORS CORPORATION, Debtor.**

**Bankruptcy No. B–85–01791 (ESL).**

United States Bankruptcy Court, D. Puerto Rico.

Aug. 13, 1987.

Richard A. Lee, Vazquez, Vizcarrondo, Alvarez, Angelet, Lee & Gonzalez, Hato Rey, P.R., for debtor.

Rafael Pérez Bachs, San Juan, P.R., for Chrysler, San Juan, Inc.

## OPINION AND ORDER

ENRIQUE S. LAMOUTTE, Chief Judge.

This case came before the Court on March 31, 1987 for a hearing to consider the propriety of the consignment by the debtor of rental payments in favor of Chrysler San Juan, Inc., and debtor's objection to proof of claim number 20 filed by Chrysler San Juan, Inc. (Chrysler). After being fully advised on the premises the Court entered a bench ruling denying debtor's objection to claim number 20 and allowing the same as an administrative expense. The debtor moved for reconsideration and the Court took both matters under advisement. The parties were ordered to file post-hearing memoranda to include proposed findings of fact and conclusions of law. The same were timely filed.

After considering the arguments and evidence presented at the March 31, 1987 hearing, the post-hearing memoranda and all relevant documents, the Court finds that the material facts to this controversy are not in dispute. The Court, thus, proceeds to enter the following findings of fact and conclusions of law pursuant to Rule 7052 of the Bankruptcy Rules.

## FINDINGS OF FACT

1. On July 5, 1966 debtor entered into a lease agreement with Chrysler for a five (5) year term to expire on July 4, 1971, covering land and buildings located at 65th Infantry Highway in Rio Piedras, Puerto Rico. See Exhibit A–1, page 12 of the Transcript. Article 1 of said lease provides that:

"Tenant shall pay to Landlord ... rent for the said term in the total amount of $176,383.20. Said rent shall be paid in monthly installments as follows ..."

2. On July 4, 1971 the parties executed an amendment which extended the lease term for one year to July 4, 1972. See Exhibit A–2, page 12 of the Transcript. Article 1 of the lease was amended to read:

"Tenant shall pay to Landlord ... rent for the said term in the total amount of $39,172.20. Said rent shall be paid in monthly installments as follows ..."

3. On June 28, 1972 the parties executed a second amendment to extend the term of the lease an additional five (5) years to expire on July 4, 1977. See Exhibit A–3, page 12 of the Transcript. Article 1 of the lease was amended to read:

"Tenant shall pay to Landlord ... rent for the said term as follows: $50,000.00 for the first year, $60,000.00 for the second year, $70,000.00 for the third year, $80,000.00 for the fourth year and $90,000.00 for the fifth year. Said rent shall be paid in monthly installments ..."

4. On June 12, 1975 the parties executed a third amendment to modify the rental amount specified in the second amendment. See Exhibit A–4, page 12 of the Transcript. The modification was stated as follows:

"Paragraph 1 of the Lease is hereby amended so that the rent for the fourth and fifth years of the terms (sic) shall be $50,000 per year."

5. On July 3, 1977 the parties executed a fourth amendment to extend the term of the lease an additional four (4) years to expire on July 4, 1981. See Exhibit A–5, page 12 of the Transcript. All other terms of the lease were left unchanged.

6. On July 3, 1981 the parties executed a fifth amendment to extend the term of the lease for an additional year to end on July 4, 1982 and to grant lessee an option to extend the term yet another year. Exhibit A–6, page 12 of the transcript. Article 1 of the lease was amended to read:

"Tenant shall pay to Landlord ... rent for the said term as follows: For the first year ... the sum of $60,000; for the

second year ... the sum of $72,000. Said rent shall be paid in monthly installments ..."

7. On July 3, 1982 the parties executed a sixth amendment to extend the term for an additional year to July 4, 1983. See Exhibit A–7, page 12 of the Transcript. Article 1 of the lease was amended to read:

"Tenant shall pay to Landlord ... as rent for the said term, the sum of $60,-000. Said rent shall be paid in monthly installments ..."

8. The parties executed a seventh amendment on July 3, 1983 to extend the term for another year.

9. On July 3, 1984 the parties executed an eighth amendment to extend the term for an additional year to July 4, 1985. See Exhibit A–8, page 12 of the Transcript. Article 1 of the lease was amended to read:

"Tenant shall pay to Landlord ... as rent for the said term the sum of $72,-000. Said rent shall be paid in monthly installments ..."

10. On July 3, 1985 the parties executed a ninth amendment to extend the term for an additional year to July 4, 1986. See Exhibit A–9, page 12 of the Transcript. In respect to the rental, the amendment provides as follows:

"The rental amount for the aforesaid term and the terms of payment thereof shall be as specified in paragraph 1 of the Lease, as amended by the Agreement entered into between the parties as of July 3, 1984, which paragraph is incorporated herein by reference and forms an integral part hereof."

11. Article 6 of the lease, unchanged by the successive amendments, reads as follows:

"6. REPAIRS AND MAINTENANCE

Except as specifically provided in paragraph 19 herein, Tenant covenants and agrees that it will at its own expense, during the continuance of this lease, *keep the demised premises,* including plate glass, *in good order and repair, and Tenant shall promptly make any and all repairs or replacements necessary for that purpose,* whether or not any of such repairs or replacements shall be interior or exterior, extraordinary as well as ordinary, and whether or not such repairs or replacements shall be of structural nature, and whether or not the same can be said to be within the present contemplation of the parties hereto; and Landlord may have access to the demised premises at reasonable times for the purpose of inspecting the same, but such right of access shall not be contrued (sic) as obliging Landlord to make any of said repairs to, or replacement of, any part of the demised premises or as obliging Landlord to make any such inspection. Where an inspection reveals repairs or replacements are necessary, Landlord shall give Tenant notice in writing, and thereupon Tenant will, within 60 days after notice from Landlord, Landlord may thereupon terminate this lease or enter upon the premises and make the said repairs or replacements itself and charge the cost thereof to Tenant as additional rent hereunder. Tenant will, at all times during the term of this lease, keep the sidewalks adjoining the demised premises in good order and repair and free from any unlawful obstructions." (Emphasis added).

12. Paragraph 22 of the Lease, unchanged by the successive amendments reads as follows:

"22. EFFECT OF WAIVER

The failure of Landlord to insist in any one or more instances upon the strict performance of any of the terms, covenants, conditions and agreements of this lease, or to exercise any option herein conferred, shall not be considered as waiving or relinquishing for the future any such terms, covenants or conditions, agreements or options, but the same shall continue and shall remain in full force and effect; and the receipt of any rent or any part thereof, whether the rent be that specifically reserved or that which may become payable under any of the covenants herein contained, and whether the same be received from Tenant or from any one claiming under or through it or otherwise shall not be deemed to operate as a waiver of the

rights of Landlord to enforce the payment of rent or charges of any kind previously due or which may thereafter become due, or the right to terminate this lease and to recover possession of the demised premises by summary proceedings or otherwise, as Landlord may deem proper, or to exercise any of the rights or remedies reserved to Landlord hereunder or which Landlord may have at law, in equity or otherwise."

13. Paragraph 23 of the lease, unchanged by the successive amendments reads as follows:

"23. HOLDOVER

Except as provided in Paragraph 30 herein, in the event that Tenant shall remain in the demised premises after the expiration or sooner termination of the term of this lease without having executed a new written lease with Landlord, such holding over shall not constitute a renewal or extension of this lease. Landlord may, at its option, elect to treat Tenant as one who has not removed at the end of his term, and thereupon be entitled to all the remedies against Tenant provided by law in that situation, or Landlord may elect, at its option, to treat such holding over as tenancy from month to month only."

14. On December 12, 1985 debtor filed its petition in the instant case.

15. On January 15, 1986 debtor filed a motion to assume its unexpired lease with Chrysler. Docket No. 14. Chrysler's response thereto did not oppose debtor's assumption of the lease. Docket No. 31.

16. On February 18, 1986, Chrysler answered Boricua's application (dkt 31). Paragraph 3 of Chrysler's answer states as follows:

"3. Upon debtor-tenant's assumption of the lease, debtor-tenant assumes same 'subject to all its limitations, one of which is obviously the expiration date.' *In re Nashville White Trucks*, 5 B.R. 112, 2 C.B.C.2d 512 (Bkcy.M.D.Tenn, 1980); *Matter of Lauderdale Motorcar Corp.*, 35 B.R. 544 (Bkcy.S.D.Fla.1983); *In re Heaven Sent, Ltd.*, 50 B.R. 636 (Bkcy.E.D.Pa.1985). The lease sought to

be assumed by debtor-tenant expires by its own terms on July 4, 1986 and may also be terminated earlier, according to its provisions. This response may not be interpreted to mean that Landlord consents to any extension or renewal of the lease beyond July 4, 1986 or that Landlord waives its right to terminate this lease earlier, according to its provisions. Landlord specifically denies that this Court's approval of Tenant's application to assume the lease entails any extension of the lease beyond July 4, 1986 or any forfeiture of Landlord's right to terminate the lease earlier, under its provisions; and Landlord likewise denies that this or any other court has power to extend the lease beyond July 4, 1986 or to modify in any way Landlord's right to terminate the lease earlier, under its provisions."

17. Paragraph four (4) of Chrysler's answer, states that:

... Debtor-tenant must maintain and/or restore the premises to the conditions required by, *inter alia*, par. 6 of the lease. *In re H & S Manufacturing Inc.*, [13 B.R. 692] 4 C.B.C.2d 1320 (Bkcy.E.D. N.Y.1981). This includes any maintenance, repair or restoration of any improvements upon the premises which become property of Landlord pursuant to par. 12 of the lease.

18. Upon notice and hearing, on March 11, 1986, the Court approved debtor's assumption of the lease by Order entered on March 14, 1986. Docket No. 48.

19. Pursuant to the terms of the July 3, 1985 amendment, the term of the lease between debtor and Chrysler expired on July 4, 1986. Transcript, at page 4 and 13.

20. On July 3, 1986 Chrysler submitted to debtor a proposed new lease agreement.

21. Debtor has remained in full use and enjoyment of the leased premises to the present time.

22. In July, August and September 1986 debtor tendered to Chrysler checks for $6,000.00 each corresponding to the rental installments due for said months, which checks were refused by Chrysler and

debtor proceeded to deposit said amounts with the Clerk of this Court. See debtor's unrefuted allegations at paragraphs 5 and 6 of its motion dated September 24, 1986, Docket No. 87. From the record it appears that debtor has deposited with the Clerk all subsequent installments coming due and in the same amount.

23. On or about October 21 and 22, 1985 the leased premises were inspected by the engineering firm of Méndez, Brunner & Associates at the request of Chrysler to make a list of all the deficiencies of the facilities and an estimate of the cost to correct said deficiencies. March 31 Transcript, at pages 56–60.

24. A written report detailing such deficiencies and estimated repair costs was prepared by said firm and submitted to Chrysler sometime in November 1985. March 31 transcript, at pages 25 and 56–60; attachment (c) to proof of claim.

25. By letter dated February 21, 1986 Chrysler demanded that debtor commence and complete the repairs set forth in the Méndez report attached thereto pursuant to Article 6 of the lease agreement. Apparently debtor did not receive this letter or have knowledge of the report until April 11, 1986. March 31 Transcript, at pages 27, 33, 44 and 47.

26. On or about April 28, 1986 Chrysler filed a proof of claim (No. 20 in this case) in the amount of $343,200.00 captioned "First Priority Proof of Claim: Administrative Rent." Debtor filed its objection thereto on November 24, 1986.

27. By letter dated March 16, 1987 Chrysler submitted a list of repairs and/or deficiencies to be made and/or corrected by debtor pursuant to Article 6 of the lease agreement. Debtor's exhibit admitted into evidence; March 31 Transcript, at page 37.

## CONCLUSIONS OF LAW

There are two legal issues which the Court must determine. First, whether the lease contract by and between Boricua and Chrysler expired by its own terms on July 4, 1986 or was renewed through tacit reconduction for another term of one year or on a month to month basis. Second, whether the claim filed by Chrysler is entitled to an administrative rent priority. We shall discuss each issue.

### Lease Contract

■ A lease contract which expires by its own terms after the order for relief under Chapter 11 may not be assumed by the debtor in possession. *Gloria Mfg. Corp. v. International Ladies Garment Workers' Union*, 734 F.2d 1020 (4th Cir. 1984). Chrysler alleges that there was a valid lease only until July 4, 1986, and that if the civil code provisions of tacit reconduction are applicable (31 L.P.R.A. § 4063), then the contract was renewed on a month to month basis because the payments were made monthly. Boricua alleges that the contract was renewed for a year because the lease contracts, as amended, characterizes the rent as a yearly amount. Both parties agree that the decision by the Supreme Court of Puerto Rico in *Dalmau v. Hernandez Saldaña*, 103 D.P.R. 487 (1975) is controlling.

Because more than one year has elapsed since July 4, 1986 the issue is now moot and the court need not enter into the merits of the controversy. If the contract expired by its own terms on July 4, 1986, was renewed for a month until August 1986 or for a year until July 1987, the final outcome is the same, that is, at this point in time the subject lease contract has expired and may not be renewed or reassumed absent the consent of both parties to the same.

### Objection to Proof of Claim by Chrysler

■ Chrysler states that its claim for $343,000.00 is entitled to an administrative rent priority because when the debtor assumed the lease contract on March 14, 1986 (the date when the Court approved the assumption), it assumed the lease in its entirety, including paragraph six (6) which called for the restorations to be made. Chrysler alleges that the obligation to make the repairs and restorations became a liability after the assumption in March 1986

and before its expiration in July 1986. Boricua contends that Chrysler is equitably estopped from asserting this claim because at the March 11, 1986 hearing to consider the assumption of the lease it did not advise or otherwise inform debtor, the court, nor any interested party, that the lease was in default and that Chrysler intended to enforce said default. Boricua cites two cases to support its contention, *In re Lafayette Radio Electronics*, 7 B.R. 189, 193 (Bankr.1980) and *Beneficial Finance Co. of Virginia v. Lazrovitch*, 47 B.R. 358, 363 (D.C.1983).

Although this Court agrees in principle with said decisions, the factual settings in the same differ significantly to the facts in the instant case.

The relevant part of the *Lafayette* decision states the following:

"The landlord's failure to take action after it has gained knowledge of the alleged breaches and its uninterrupted acceptance of rent payments were in effect representations to Lafayette and its subtenant that business could continue as usual. ... Moreover, since this Court inherently possesses the powers of equity, *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), *it may employ the equitable estoppel doctrine in a manner not inconsistent with the Code.*

It is clear that in reliance on the landlord's inaction Lafayette viewed its position as secure enough to enter into a sublease, and the subtenant viewed its position as secure enough to make costly improvements to the premises. Had the landlord served timely notice of its objections on Lafayette, it is not likely that Lafayette and its subtenant would have so acted. Furthermore, Lafayette would have been in a better position to cure the alleged structural alteration breaches. It was incumbent on the landlord to serve timely notice upon Lafayette if it intended to claim defaults under the lease. *In re Sapolin Paints, Inc. and Woolsey Marine Industries, Inc.*, 5 B.R. 412, 2 C.B.C.2d 854, 862 (Bkrtcy.E.D.N.Y.1980) (applying California law). It

would be inequitable to allow the landlord to step in at this late date to claim for itself a windfall consisting of the difference between a newly negotiated rental and the current rate. Therefore, the Court finds that the only defaults which Lafayette must cure under § 365(b)(1) as a precondition for assuming the lease are the aforementioned rent, real estate tax and roof repair."

The facts before us show that Chrysler did not accept payment of the rental under the terms of the contract which expired on July 4, 1986, was negotiating what the debtor has labeled as an unacceptable and totally new contract, and was at all times active in pursuing both compliance with the terms of the assumed contract and also more favorable terms on a new contract. It cannot be reasonably inferred from Chrysler's actions that it had represented to Boricua that "business could continue as usual". On the contrary, Boricua should have known that it was confronting difficult negotiations wherein the lessor had substantial leverage.

The relevant part of the *Beneficial Finance* decision states that:

"Bankruptcy is an equitable proceeding and rules of equity are to be applied. Applying these principles, there is another basis for permitting debtors to petition for a reopening of the bankruptcy proceedings and the filing of the lien avoidance complaint. Appellant filed its claim in this case as an unsecured claim, even though notice had been given that claims need not be filed. Had it at that time filed the claim and asserted its lien, debtor would have been alerted to file a complaint for avoidance of the lien. Having filed its claim as an unsecured claim, *it lulled debtor into a position of inaction.* It ought now be estopped from attempting to assert the statute of limitations in an effort to prevent the debtor from having the case reopened and being granted the right to file the complaint for avoidance of the lien. Appellant makes no contention that had the avoidance complaint been filed prior to the discharge, debtors would not have been entitled to relief. The contention is that

the failure to file before the discharge bars the right to relief. Appellant ought to be estopped from raising the issue of the limitations by its action in listing its claims as unsecured and now attempting to establish it as a secured lien. Equitable estoppel is grounded in the 'maxim that no man may take advantage of his own wrong' and 'this principle has been applied in many diverse classes of cases by both law and equity courts, and has frequently been employed to bar inequitable reliance on statutes of limitations.' *Glus v. Brooklyn Eastern District Terminal,* 359 U.S. 231, 232–233, 79 S.Ct. 760, 762, 3 L.Ed.2d 770 (1959). The rule in this circuit is clear that to establish equitable estoppel, it is not necessary to show actual fraud. It is 'only necessary to show that the person estopped, by his statements or conduct, misled another to his prejudice. *United States for Use and Benefit of Noland Co. v. Wood,* 99 F.2d 80, 82 (4th Cir.1938).' *United States v. Fidelity and Casualty Co. of New York,* 402 F.2d 893 (4th Cir.1968). Estoppel focuses not on the intent of the party, but on the effects of his conduct upon the other party, for even if he has not waived a known right he may be estopped from enforcing it. *Saverslak v. Davis-Cleaver Produce Co.,* 606 F.2d 208 (7th Cir.1979), cert. denied, 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 762. Appellant's position now is that its claim is a secured claim, all of which is contrary to its position when it filed its claim as an unsecured one."

Again, the facts in *Beneficial Finance* differ from the ones before this Court. Rather than having "lulled debtor into a position of inaction" by failing to give notice of its position, Chrysler clearly stated in its February 18, 1986 response to Boricua's motion for assumption of lease that: (1) Boricua must assume the lease subject to all its limitations, (2) that the lease would expire on July 4, 1986, (3) that it does not consent to an extension of the lease after July 4, 1986; and, particularly, (4) that debtor tenant must restore the premises to the conditions required by paragraph six (6) of the lease.

Although Chrysler did not object to the assumption of the lease, it characterized its response as a "Miranda-type warning." The message was there, in writing, and warning lights were also lit. It cannot be said that Chrysler failed to alert any party as to its position. It did so by motion.

In view of the foregoing, the Court finds the doctrine of equitable estoppel is not applicable to the instant factual setting. We, thus, proceed to expand on our bench ruling finding that claim number 20 by Chrysler is entitled to an administrative rent priority.

■ If a debtor in possession opts to assume a contract it must assume the contract in its entirety. *N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984), *In re Corporacion de Servicios Medicos Hospitalarios de Fajardo,* 805 F.2d 440, 447–448 (1st Cir.1986); *Matter of Three Star Telecast, Inc.,* 73 B.R. 270, 274 (Bankr.P.R.1987). When the debtor assumed the lease contract with Chrysler it assumed paragraph 6. Since Chrysler's demand for repair under paragraph 6 was made on February 24, 1986, the same became enforceable 60 days thereafter, that is, on April 24, 1986. It follows that the requirements of paragraph 6 became effective and a liability after the approval by the court on March 14, 1986 of debtor's motion for assumption of lease contract. In any event, the lessor could not enforce said clause unless and until the debtor was authorized to assume the lease. *Matter of Three Star Telecast, Inc.,* supra, at 274. Consequently, since the clause became effective and enforceable post petition and post assumption, the same is administrative rent.

■ Because the debtor has used the premises up to the present, the lessor is entitled to receive the reasonable use and occupance value of the benefits the lessee has enjoyed. Absent other evidence, the contract rate is the reasonable value. *Matter of Three Star Telecast, Inc.,* supra, at 274. Accordingly, it is hereby decided that Chrysler is entitled to receive $6,000.00 per

month for the use and occupance of its premises by Boricua.

CONCLUSION

In view of the foregoing the Court now orders as follows:

1. At the present, there is no lease contract between Boricua and Chrysler.

2. Debtor's objection to claim number 20 is allowed as administrative rent.

3. Debtor shall pay Chrysler use and occupance payments in the amount of $6,000.00 per month until it vacates the premises or is evicted.

IT IS SO ORDERED.