**In re PMC MARKETING CORP., Debtor(s).**

**Aguadilla Shopping Center, Inc., Appellant,**

v.

**PMC Marketing Corp., Appellee,**

**U.S. Trustee, Appellee.**

**Civil No. 10–1511 (DRD).**

United States District Court, D. Puerto Rico.

March 30, 2011.

Carmen D. Conde–Torres, Robert Freedman, C. Conde & Mirandes, San Juan, PR, for Appellant.

Charles A. Cuprill–Hernandez, Charles A. Cuprill PSC, San Juan, PR, Monsita Lecaroz–Arribas, U.S. Trustee Office, San Juan, PR, for Appellee.

## OPINION AND ORDER AMENDED NUNC PRO TUNC

DANIEL R. DOMINGUEZ, District Judge.

Pending before the Court is an appeal filed by creditor-appellant Aguadilla Shopping Center, Inc. (hereinafter "ASCI" or "Appellant"), against the debtor PMC Marketing Corp. (hereinafter "PMC" or "Debtor"), wherein the ASCI challenges the *Order* of April 15, 2010, entered by the Hon. Brian K. Tester, in Bankruptcy No. 09–2048(BKT), Docket No. 714, denying ASCI's objection to the Debtor's rejection of the nonresidential lease agreement with ASCI, based on the doctrine of equitable estoppel. For the reasons set forth below, the instant appeal is dismissed with prejudice, further the *Order* of April 15, 2010 entered by the bankruptcy court is affirmed.

## Jurisdiction

This Court has jurisdiction to entertain the certification referred from the bankruptcy court under 28 U.S.C. § 158(a)(1).

## Standard of Review

On bankruptcy appeals, the district court reviews rulings of law *de novo* and findings of fact for clear error. *Prebor v. Collins (In re I Don't Trust)* 143 F.3d 1, 3 (1st Cir.1998); *Jeffrey v. Desmond,* 70 F.3d 183, 185 (1st Cir.1995). "Under an abuse of discretion standard, a reviewing court cannot reverse unless it has a 'definite and firm conviction that the court below committed a clear error of judgment' in the conclusion it reached upon a weighing of the relevant factors." *In re Hosseinpour–Esfahani, et al. v. Hosseinpour–Esfahani,* 198 B.R. 574, 577 (9th Cir. BAP 1996), citing *Marchand v. Mercy Medical Ctr.,* 22 F.3d 933, 936 (9th Cir. 1994). "Evidentiary rulings by the bankruptcy court are subject to the 'abuse of discretion' standard." *Williamson v. Busconi,* 87 F.3d 602, 603, n. 4 (1st Cir.1996), citing *United States v. Cotto–Aponte,* 30 F.3d 4, 6 (1st Cir.1994).

"The standard of review on this appeal requires that we respect, unless 'clearly erroneous,' all findings of fact by the bankruptcy court, which includes any finding of actual reliance and any raw fact findings pertinent to the issue of justifiable reliance. *Brandt v. Repco Printers & Lithographics, Inc.,* 132 F.3d 104, 107–08 (1st Cir.1997)." *In re Spadoni,* 316 F.3d 56, 58 (1st Cir.2003). "A court reviewing a decision of the bankruptcy court may not set aside findings of fact unless they are clearly erroneous, giving 'due regard ... to the opportunity of the bankruptcy court to judge the credibility of the witnesses. (Citations omitted)." *Palmacci v. Umpierrez,* 121 F.3d 781, 785 (1st Cir.1997).

"A finding of fact is clearly erroneous, although there is evidence to support it, when the reviewing court, after carefully examining all the evidence, is 'left with the definite and firm conviction that a mistake

has been committed.' " *Palmacci,* 121 F.3d at 785, citing *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). "Deference to the bankruptcy court's factual findings is particularly appropriate on the intent issue '[b]ecause a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor.' " *Id.* citing *In re Burgess,* 955 F.2d 134, 137 (1st Cir.1992). "Particular deference is also due to the trial court's findings that depend on the credibility of other witnesses and on the weight to be accorded to such testimony." *Id.* citing Fed.R.Bank.R. 8013; *Keller v. United States,* 38 F.3d 16, 25 (1st Cir.1994).

Moreover, when the parties do not contest the findings of fact made by the bankruptcy court, the appeals court will not disturb them. *In re Joelson,* 427 F.3d 700, 702 (10th Cir.2005) ("Because the parties do not specifically contest the bankruptcy court's findings of fact, the court will not disturb this ruling on appeal"), citing *Jenkins v. Hodes (In re Hodes),* 287 B.R. 561, 570 (D.Kan.2002), *aff'd,* 402 F.3d 1005 (10th Cir.2005).

### Issues

The issues before the Court are: (a) "whether a party who has induced a landlord's forbearance in exercising its rights by moving the Court [bankruptcy court] to assume an unexpired lease and having procured an Order from the Court allowing the party to sell its assumed lease, may then change its position and reject the lease without consequence despite the reliance of the Court and the landlord on the party's prior representation;" [1] (b) whether ASCI is entitled to collect the pre-petition rental arrears owed by the Debtor, as an administrative expense; and (b) whether the month to month nonresidential lease agreement is an executory contract under Section 365 of the Bankruptcy Code.[2]

### Factual and Procedural Background

On March 18, 2009, PMC filed for voluntary relief under Chapter 11 of the Bankruptcy Code, under Case No. 09–2048(BKT).[3] The United States Trustee appointed an Official Committee of Unsecured Creditors on March 26, 2009, followed by the appointment of counsel for the creditors' committee, *see* Bankruptcy No. 09–2048(BKT), Docket entries No. 21, 33. ASCI alleges that as of petition date, the debtor owed ASCI an amount of $165,132.00 in rental arrearage.[4] Based on the provisions of the Bankruptcy Code, ASCI argues that it could not take any action against the debtor, pursuant to the provisions of 11 U.S.C. § 365. Hence, ASCI had to wait at least 120 days to

---

**1.** The Court notes that this is ASCI's only issue on appeal, *see Transmittal of Record on Appeal,* Case No. 10–1511(DRD), Docket No. 1, page 1. The Court notes, however, that on the *Notice of Appeal* filed by ASCI with the bankruptcy court, the issue on appeal was stated somewhat differently. ASCI challenges the bankruptcy court's *Order* of April 15, 2010, "denying Aguadilla Shopping Center's Motion to have the pre-petition rental arrears wed to it by Debtor classified as an administrative expense (Dkt. No. 587)." The district court will address ASCI's issues separately.

**2.** The issue of whether a month to month nonresidential lease agreement is an executo-

ry contract is a question raised by the Debtor in its Appellee's brief. The Court deems necessary to address this question briefly.

**3.** On that same date, YMAS Inventory Management Corp. also filed for relief under Chapter 11, under Case No. 09–2049(BKT). On October 9, 2009, both petitions were consolidated, *see* Bankruptcy No. 09–2048(BKT), Docket No. 352.

**4.** The Court notes that ASCI filed an unsecured claim on May 29, 2009 in the amount of $205,932.16 for pre-petition rent arrears, *see* Claim No. 47.

pursue any action against the debtor as to the assumption or rejection of the nonresidential lease agreement.

When the July 17, 2009 deadline to assume or reject the executory contracts was approaching, the debtor requested an "emergency" extension of time, which is allowed under the Bankruptcy Code. Eventually, on October 14, 2009, the debtor filed an *Application for Leave to Assume or Reject Lease Contracts*, Bankruptcy No. 09–2048(BKT), Docket No. 356, wherein the debtor assumed the nonresidential lease agreement entered into with ASCI.

On November 18, 2009, the debtor filed *Debtor's Urgent Motion for Orders Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, Bankruptcy Rule 4001(c)(2)(c)(2) and Local Bankruptcy Rule 9013–1(f): (A) Authorizing the Sale of Certain of Debtor's Assets, Free and Clear of All Liens, Claims, Interests and Encumbrances, Subject to the Terms of Proposed Agreement of Purchase and Sale and to Higher and/or Better Offers; (B) Authorizing Debtor's to Consummate All Transactions Related to the Proposed Sale; and (C) Granting Other Relief Including Scheduling of Auction, and Approving Bidding Procedures* (hereinafter the "Debtor's Urgent Motion"), Bankruptcy No. 09–2048(BKT), Docket No. 394. The bankruptcy court set the objections to the sale of the assets for November 25, 2009, *see* Bankruptcy No. 09–2048(BKT), Docket No. 402. The objections to the Debtor's Urgent Motion were heard by the bankruptcy court on November 25, 2009 followed by an *Amended Order Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code Approving (A) The Asset Purchase Agreement; (B) The Bidding Procedures; (C) Approving the Form and Manner of Notice of the Sale by Debtor of Certain Assets; and (D) Scheduling a Sale Hearing,* entered on the same date. *See* Bankruptcy No. 09–2048(BKT), Docket No. 406. A hearing to confirm the sale of the assets was set for January 15, 2010 at 9:30 a.m., which was continued to February 19, 2010. The objections' deadline to the sale of the assets was set for December 30, 2009.

On January 14, 2010, ASCI filed a *Motion for Allowance of Chapter 11 Administrative Expense Claim, see* Bankruptcy No. 09–2048(BKT), Docket No. 500.[5] ASCI based its request on the fact that the debtor had effectively assumed the nonresidential lease agreement on October 14, 2009, and under the provisions of section 365(b)(1)(A), the debtor had to cure the pre-petition arrearage or provide adequate assurance of payment. The debtor, however, on the eve of the hearing to confirm the sale of its assets, including the "assumed" leases, surprisingly moved the bankruptcy court to assume and reject several executory contracts. *See* debtor's *Application for Leave to Assume or Reject Lease Contracts* filed on January 14, 2010 at 6:03 p.m., Bankruptcy No. 09–2048(BKT), Docket No. 501. On January 14, 2010, the debtor rejected the lease with ASCI, *see* Bankruptcy No. 09–2048(BKT), Docket No. 501, ¶ 11, page 9.

The bankruptcy court held the hearing to confirm the debtor's sale of its assets, on February 19, 2010, *see Minutes* of February 19, 2010, Bankruptcy No. 09–2048(BKT), Docket No. 663, page 3. As to ASCI's motion requesting the allowance of an administrative claim, Bankruptcy No.

---

**5.** The Court notes that the debtor listed ASCI as an "unsecured nonpriority" creditor under Schedule F, and as the landlord of a commercial lease on a month to month basis under Schedule G of the bankruptcy petition.

09–2048(BKT), Docket No. 500, the bankruptcy court held:

Aguadilla Shopping Center's motion requesting: a. The amount of $32,218.46 as a post-petition administrative expense under § 503(b)(1)(A) with priority under § 507(a)(2) plus any other amounts to be incurred until the premises are surrendered; b. The amount of at least $165,132.11 as an administrative expense for al the pre-petition rent owed and not paid under the provisions of § 503(b)(7) with priority under § 507(a)(2) in relation to the pre-petition use of the premises located at Road # 2, Bo. La Montaña, Aguadilla, P.R. and c. The immediate surrendering of the premises to Aguadilla Shopping Center, Inc. upon Debtor's latest decision to reject the assumed lease (**docket # 500**) is GRANTED. The total agreed amount of the allowed administrative expenses is $32,218.00. Aguadilla Shopping Center is to be paid the rents of January 2010 and February 2010 from whomever is occupying the premises and a separate motion requesting administrative expenses should be filed. (Emphasis in the original).

*See Minutes* of February 19, 2010, Bankruptcy No. 09–2048(BKT), Docket No. 663, page 3.

On February 26, 2010, ASCI filed its *Reply to Debtor's Dockets # 570 and # 571 Responding to Aguadilla Shopping Center's Equitable Estoppel Argument,* Bankruptcy No. 09–2048(BKT), Docket No. 587. In essence, ASCI's reply constitutes a request for reconsideration of the bankruptcy court's *Order* of February 19, 2010, Bankruptcy No. 09–2048(BKT), Docket

No. 663. On March 24, 2010, debtor filed a *Sur–Reply to Aguadilla Shopping Center's Reply to Debtor's Dockets # 570 and # 571 Responding to Aguadilla Shopping Center's Equitable Estoppel Argument,* Bankruptcy No. 09–2048(BKT), Docket No. 655. On April 15, 2010, the bankruptcy court denied ASCI's motion, Bankruptcy No. 09–2048(BKT), Docket No. 587, without the imposition of sanctions, costs or attorneys fees. *See* Bankruptcy No. 09–2048(BKT), Docket No. 714.[6]

Thereafter, the bankruptcy court entered several orders granting ASCI's request as to the payment of administrative expenses; post-petition debt and damages. *See* Bankruptcy No. 09–2048(BKT), Docket entries No. 695, 713. However, on April 15, 2010, the bankruptcy court denied ASCI's remedy under the equitable estoppel doctrine, *see Order* of April 15, 2010, Bankruptcy No. 09–2048(BKT), Docket No. 714. ASCI to possession of the premises after the debtor vacated the premises on March 10, 2010. *See Appellant's Brief,* Case No. 10–1511(DRD), Docket No. 2, page 17.

On May 20, 2010, the debtor's case was converted to Chapter 7, *see Order* of May 20, 2010, Bankruptcy No. 09–2048(BKT), Docket No. 863. The United States Trustee appointed Noreen Wiscovitch–Rentas, as the Chapter 7 Trustee, *see* Bankruptcy No. 09–2048(BKT), Docket entries No. 859, 866. The instant appeal followed on June 8, 2010.

### Applicable Law and Discussion

The Court prefers to leave the appellant's issue for last.

---

6. For easy reference, the district court transcribes the bankruptcy court's *Order* of April 15, 2010:

The Court [bankruptcy court] adopts as it's findings and conclusions the motion filed at docket entry # 655 and DENIES the request at docket entry # 587, without the imposition of sanctions, costs or attorney fees.

IT IS SO ORDERED.

## A. *Whether a month to month nonresidential lease agreement is an executory contract.*

 It is well known that the Bankruptcy Code does not define the terms "executory contract" and "lease." Hence, reference is made to the legislative history of the Bankruptcy Code, wherein Congress "adopted" the definition of "executory contract" as defined by Professor Vern Countryman: "A contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Countryman, *Executory Contracts in Bankruptcy,* 57 Minn. L. Rev. 439, 446 (1973). *See 3 Collier On Bankruptcy* ¶ 365.02[2][a], pages 365–15, 365–16, n.10, 16th Revised Edition. "The decision to assume or reject a contract lease is subject to court approval." *Collier* ¶ 365.02[1], page 365–15. *See also Thinking Machines Corporation v. Mellon Financial Services Corporation # 1,* 67 F.3d 1021, 1025–1027 (1st Cir.1995) SELYA, J. (court approval is a required when rejecting a nonresidential lease). In *Thinking Machines Corporation, supra,* the Court held:

> This appeal compels us to address a nagging question of bankruptcy law on which no court of appeals has yet spoken and on which lower federal courts are divided. The problem relates to the operation of section 365(a) of the Bankruptcy Code, 11 U.S.C. § 365(a) (1994), a statute that permits a Chapter 11 trustee, subject to certain conditions, to assume or reject any unexpired lease or executory contract in existence on the date of insolvency proceeding commences. Because the trustee's actions require court approval, and because the Code treats nonresidential leases differently than other leases or executory contracts, requiring the estate to continue

paying rent at the contract rate until rejection takes effect, 11 U.S.C. § 365(d)(3), a question arises: Is court approval a condition precedent or subsequent to the effective rejection of a nonresidential lease pursuant to section 365(a)? This question is of considerably more than academic interest. Time is money in the waiting game that Chapter 11 often entails, and substantial sums can ride on how quickly the trustee can jettison a high-priced lease. In this case, for example, the determination of which date controls carries with it a swing of approximately $200,000.

. . .

[T]he statute is most propitiously read to make court approval a condition precedent to an effective rejection of a nonresidential lease,

. . . .

 "Difficulties arise in applying the executory contract analysis to situations in which a contract breach or default has occurred prior to bankruptcy." 2 *Norton Bankr. L. & Prac.* 3d § 46.5. **"The mere existence of a prebankruptcy default does not necessarily transform the contract into a nonexecutory agreement."** *Id.* (Emphasis ours). "Federal law governs the determination of whether a contract is executory and thereby subject to Code § 365." *Id.*

 In the instant case, the lease agreement between ASCI and the debtor expired, after several renewals, on or about 1997. However, pursuant to the terms ASCI's lease agreement, the "renewal term shall be construed to be a tenancy from month to month at the rents specified above and will be subject to all the other terms and conditions specified in this lease so far as applicable unless the parties are engaged for a reasonable amount of time in negotiations for the extension of this

contract." *See Shopping Center Lease,* Bankruptcy No. 09–2048(BKT), Claim No. 47–1, ¶ 32. Hence, the Court finds that ASCI's nonresidential lease agreement was a month to month unexpired executory contract at petition date, subject to be assumed as a commercial lease, regardless of the pre-petition arrearage, as the debtor was occupying the leased premises and was benefitting from it. *See also In re Vigo,* 2009 WL 4040145, *6, *7 (Bankr. D.P.R. November 20, 2009) (LAMOUTTE, J.).

B. *Whether ASCI is entitled to collect the pre-petition rental arrears owed by the Debtor, as an administrative expense.*

■ Pursuant to section 365(b)(1)(A), the assumption of an executory contract, such as, ASCI's nonresidential lease agreement, assumed by the debtor under the Chapter 11 proceedings, provides that the assumption of the lease is conditioned upon the cure of the pre-petition arrears, as well as post-petition, or the debtor shall provide adequate assurance of performance. According to the provisions of sections 365(b)(1)(A), 503(b)(7) and 507(a)(2) of the Bankruptcy Code, the landlord is entitled to be paid as an administrative priority claim, even if the lease is later rejected by the debtor, prior to the confirmation of the plan.

■ In the instant case, the debtor assumed ASCI's lease while still under Chapter 11, hence, the bankruptcy court allowed the pre-petition rent arrears, as well as the post-petition arrears, as a priority administrative claim under §§ 503(b)(7) and 507(a)(2), notwithstanding that the debtor rejected the lease. *See Minutes* of February 19, 2010, Bankruptcy No. 09–2048(BKT), Docket No. 663, page 3. However, under the Bankruptcy Code, the debtor has until the confirmation of the

plan to assume or reject an executory contract, under the provisions of section 365 of the Code. *See also* Friedland, Jonathan P., *Commercial Bankruptcy Litigation* § 8.7.

C. *"Whether a party who has induced a landlord's forbearance in exercising its rights by moving the Court [bankruptcy court] to assume an unexpired lease and having procured an Order from the Court allowing the party to sell its assumed lease, may then change its position and reject the lease without consequence despite the reliance of the Court and the landlord on the party's prior representation."*

ASCI raises the applicability of several doctrines, such as, judicial estoppel and equitable estoppel on appeal, in support of its argument that ASCI is entitled to collect all pre-petition and post-petition arrears owed by the debtor under the nonresidential lease agreement as a priority administrative expense, pursuant to 11 U.S.C. § 503(b)(7). The Court notes that the bankruptcy court already granted this request in its *Order* of February 19, 2010, *see* Bankruptcy No. 09–2048(BKT), Docket No. 663, page 3.

■ In the case of *In re Boricua Motors Corporation,* 77 B.R. 358, 364 (Bankr.D.P.R.1987), citing *Beneficial Finance Co. of Virginia v. Lazrovitch,* 47 B.R. 358, 363 (Bankr.E.D.Va.1983), the Court discussed the application of the doctrine of equitable estoppel within the bankruptcy context:

"Equitable estoppel is grounded in the "maxim that no man may take advantage of his own wrong" and "this principle has been applied in many diverse classes of cases by both law and equity courts, and has frequently been employed to bar inequitable reliance on

statutes of limitations." *Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 232–233, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959). **The rule in this circuit is clear that to establish equitable estoppel, it is not necessary to show actual fraud. It is "only necessary to show that the person estopped, by his statements or conduct, misled another to his prejudice.** *United States for Use and Benefit of Noland Co. v. Wood*, 99 F.2d 80, 82 (4th Cir.1938)." *United States v. Fidelity and Casualty Co. of New York*, 402 F.2d 893 (4th Cir.1968). Estoppel focuses not on the intent of the party, but on the effects of his conduct upon the other party, for even if he has not waived a known right he may be estopped from enforcing it. *Saverslak v. Davis–Cleaver Produce Co.*, 606 F.2d 208 (7th Cir. 1979), cert. denied, 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 762 [1980]. Appellant's position now is that its claim is a secured claim, all of which is contrary to its position when it filed its claim as an unsecured one." (Emphasis ours).

In the *Boricua Motors* case, *supra*, the bankruptcy court held that the lessor cannot enforce any clause of the nonresidential lease agreement until the debtor has assumed the unexpired lease, and the bankruptcy court has authorized the debtor to indeed assume the lease. "Consequently, since the clause became effective and enforceable post petition and post assumption, the same is administrative rent." *Boricua Motors*, 77 B.R. at 364. The bankruptcy court further held that "[b]ecause the debtor has used the premises up to the present, the lessor is entitled to receive the reasonable use and occupance value of the benefits the lessee has enjoyed." *Id.* "Absent other evidence, the contract rate is the reasonable value." *Id.*

The ruling of the bankruptcy court in the *Boricua Motors* case is consistent with the ruling made by the bankruptcy court in the instant case, *see Minutes* of February 19, 2010, Bankruptcy No. 09–2048(BKT), Docket No. 663, page 3. However, the collection of said rents in arrears is subject to the debtor's solvency or the funds available in the debtor's estate.

The Court finds that the doctrine of equitable estoppel is not applicable to our factual scenario, simply because ASCI has failed "to show that the person estopped, by his statements or conduct, misled another to his prejudice." After a careful review of the evidence presented, the Court finds that it is uncontested that debtor's counsel represented to the bankruptcy court and to ASCI, at all times, that it will assume ASCI's nonresidential lease. The Court finds, however, that debtor's actions, *albeit* undesirable, are not out of bound, as debtor indeed filed a "timely" motion to assume ASCI's lease, after maxing out all possible provisions for extension of time under section 365 of the Bankruptcy Code to avoid the unavoidable, that is, to assume or reject the lease within the period provided by the Code. Furthermore, the debtor waited until the eve of the hearing to confirm the sale of debtor's assets including the assumed leases, to reject ASCI's nonresidential lease. Although debtor's strategy may be challenged as unreasonable or may be interpreted as misleading to ASCI, the fact remains that the Bankruptcy Code allows a Chapter 11 debtor to assume or reject an executory contract at any time prior to confirmation of the plan. *See* 11 U.S.C. § 365(d)(2). In the event the case is converted to Chapter 7, or was originally filed as a Chapter 7, then the trustee has to assume or reject the nonresidential lease within the time period provided by section 365(d)(1) of the Bankruptcy Code.

The Court is also cognizant of two important factors, which will partially impair

ASCI's right to collect the amount owed by debtor on a priority basis, that is: (a) the debtor admitted at the February 19, 2010 hearing that it lacks the funds to pay the amount owed to ASCI, as ordered by the bankruptcy court; and (b) on May 20, 2010, that is, barely three months after the bankruptcy court granted ASCI's request to be paid as an administrative expense, the debtor's Chapter 11 case was converted to Chapter 7, upon creditors' request. The conversion of debtor's petition to Chapter 7 translates into a completely different scenario under the Bankruptcy Code, both for the debtor and ASCI, as well as all parties in interest.

 In *Perry v. Blum*, 629 F.3d 1, 8–13 (1st Cir.2010), (SELYA, J.), the Court thoroughly analyzed the application of the doctrine of judicial estoppel in bankruptcy. The Court held:

> The doctrine of judicial estoppel is equitable in nature. It operates to prevent a litigant from taking a litigation position that is inconsistent with a litigation position successfully asserted by him in an earlier phase of the same case or in an earlier court proceeding. *InterGen N.V. v. Grina*, 344 F.3d 134, 144 (1st Cir. 2003). The purpose of the doctrine is to protect the integrity of the judicial process. It is typically invoked when a litigant tries to play fast and loose with the courts. *New Hampshire v. Maine*, 532 U.S. 742, 749–50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001); *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir.2004); *Patriot Cinemas, Inc. v. Gen. Cinemas Corp.*, 834 F.2d 208, 212 (1st Cir.1987).
>
> The contours of judicial estoppel are hazy. But even though its elements cannot be reduced to a scientifically precise formula, *New Hampshire*, 532 U.S. at 750, 121 S.Ct. 1808, courts generally require the presence of three things before introducing the doctrine into a particular case. First, a party's earlier and later positions must be clearly inconsistent. *Id.; Alt. Sys. Concepts*, 374 F.3d at 33. Second, the party must have succeeded in persuading a court to accept the earlier position. *New Hampshire*, 532 U.S. at 750, 121 S.Ct. 1808; *Alt. Sys. Concepts*, 374 F.3d at 33. Third, the party seeking to assert the inconsistent position must stand to derive an unfair advantage if the new position is accepted by the court. *New Hampshire*, 532 U.S. at 751, 121 S.Ct. 1808; *Alt. Sys. Concepts*, 374 F.3d at 33.
>
> . . .
>
> The party proposing an application of judicial estoppel must show that the relevant court actually accepted the other party's earlier representation. *See Gens v. Resolution Trust Corp.*, 112 F.3d 569, 572 (1st Cir.1997).... "Acceptance" in this context is a term of art. In order to satisfy this prerequisite, a party need not show that the earlier representation led to a favorable ruling on the merits of the proceeding in which it was made, but must show that the court adopted and relied on the represented position either in a preliminary matter or as part of a final disposition....
>
> The showing of judicial acceptance must be a strong one....
>
> **[J]udicial estoppel is not meant to be a trap for the unwary and should be employed sparingly when "there is no evidence of intent to manipulate or misled the courts."** *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 365 (3d Cir.1996). (Emphasis ours).

 In the instant case, the record is clear as to what the position of the debtor was since the inception of the case, and the different fluctuations of the debtor's strategy throughout the bankruptcy proceed-

ings. Likewise, ASCI's position has been transparent with its compliance of the provisions of the Bankruptcy Code, particularly as to section 365. Although the debtor's strategy may be challengeable, the fact is that the strategy is devoid of an intent to knowingly defraud or misled the bankruptcy court nor counsel. True, debtor's counsel took advantage of every single disposition of the Bankruptcy Code to benefit the debtor's estate, however, within the bounds of the provisions of the Code.

Hence, the Court finds that the doctrines of judicial and equitable estoppel are inapplicable to the instant case, as the Court finds that the debtor's management of its bankruptcy case is not out of bounds, within the provisions of the Bankruptcy Code.

### Conclusion

For the reasons set forth above, the *Order* of April 15, 2010 issued by the bankruptcy court is affirmed. This matter is referred to the bankruptcy court for further proceedings. Judgment will be entered accordingly.

IT IS SO ORDERED.